UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

————————————

No. 04-16
(CA-03-764-A)

————————————

DARICK DEMORRIS WALKER,

Petitioner - Appellant,

versus

WILLIAM PAGE TRUE, Warden,
Sussex I State Prison,

Respondent - Appellee.

--------------------------

THE ARC OF VIRGINIA,

Amicus Supporting Appellant.

————————————

O R D E R

————————————

The court amends its opinion filed February 17, 2005, as follows:

On page 10, second full paragraph, beginning at line 6, and page 15, beginning at line 12 -- the citations to <u>Walton v. Johnson</u>, 269 F. Supp. 2d 692 (W.D. Va. 2003), and explanatory parentheticals are deleted.

For the Court - By Direction


 /s/ Patricia S. Connor 
Clerk

**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

DARICK DEMORRIS WALKER,
            *Petitioner-Appellant,*

v.

WILLIAM PAGE TRUE, Warden,
Sussex I State Prison,
            *Respondent-Appellee.*

No. 04-16

THE ARC OF VIRGINIA,
      *Amicus Supporting Appellant.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge.
(CA-03-764-A)

Argued: December 1, 2004

Decided: February 17, 2005

Before LUTTIG and GREGORY, Circuit Judges, and
W. Craig BROADWATER, United States District Judge
for the Northern District of West Virginia,
sitting by designation.

Vacated and remanded by published opinion. Judge Luttig wrote the
opinion, in which Judge Broadwater joined. Judge Gregory wrote an
opinion concurring in part and dissenting in part.

## COUNSEL

**ARGUED:** David William Ogden, WILMER, CUTLER, PICKER-ING, HALE & DORR, L.L.P., Washington, D.C., for Appellant. Robert Quentin Harris, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellee. **ON BRIEF:** David P. Donovan, WILMER, CUTLER, PICKERING, HALE & DORR, L.L.P., McLean, Virginia; Lara Ann Englund, Alison J. Nathan, Edward N. Siskel, Eric J. Hougen, WIL-MER, CUTLER, PICKERING, HALE & DORR, L.L.P., Washington, D.C., for Appellant. Jerry W. Kilgore, Attorney General of Virginia, Richmond, Virginia, for Appellee. Paul M. Smith, Kathleen R. Hartnett, JENNER & BLOCK, L.L.P., Washington, D.C., for Amicus Supporting Appellant.

---

## OPINION

LUTTIG, Circuit Judge:

Petitioner Darick Demorris Walker was convicted of capital murder by a jury in the Circuit Court for the City of Richmond for the killings of Stanley Beale and Clarence Threat within a three-year period. J.A. 253. Consistent with the jury's verdict and sentencing recommendation, the trial judge imposed a sentence of death. J.A. 253-54. Walker's conviction and sentence were affirmed on direct appeal. *Walker* v. *Commonwealth*, 515 S.E.2d 565 (Va. 1999), *cert. denied*, 528 U.S. 1125 (2000). After unsuccessfully pursuing state post-conviction relief, J.A. 254, Walker filed a federal habeas petition. The district court denied that petition, and Walker appealed. On appeal, Walker asserted, for the first time, that his execution would violate the Eighth Amendment as interpreted by the Supreme Court in *Atkins* v. *Virginia*, 536 U.S. 304 (2002). We construed this claim as a motion for authorization to file a successive section 2254 petition and granted Walker such authorization. *Walker* v. *True*, 67 Fed. Appx. 758, 770-71 (4th Cir. 2003); J.A. 61.

On June 11, 2003, Walker filed his successive petition and accompanying exhibits in the district court. J.A. 5-230. The district court

dismissed Walker's petition, J.A. 253, and the instant appeal followed. For the reasons set forth below, we hold that the district court erred when it dismissed Walker's petition before holding an evidentiary hearing and, consistent with this determination, vacate the judgment of the district court and remand the case for further proceedings consistent with this opinion.

## I.

The procedural posture of Walker's claim before the district court bears on the ultimate disposition of that claim, and we therefore explore it in some detail. Because *Atkins* was decided after Walker's conviction and sentence became final, that claim has never been presented in state court. Indeed, when we authorized Walker to file a successive petition to raise his *Atkins* claim, we noted that the district court was "free to dismiss it without prejudice to afford the Commonwealth of Virginia the first opportunity to assess Walker's *Atkins* claim." *Walker*, 67 Fed. Appx. at 770-71; J.A. 62. But after our decision authorizing Walker to file his successive petition, Virginia enacted a statutory framework addressing the "presentation of a claim of mental retardation by persons sentenced to death before April 29, 2003." Va. Code § 8.01-654.2. That framework provides that petitioners, such as Walker, who have "completed both a direct appeal and a [state] habeas corpus proceeding . . . shall not be entitled to file any further habeas petitions in the Supreme Court and [the] *sole remedy shall lie in federal court*." *Id*. (emphasis added).

As a consequence of Virginia's statutory framework, Walker presented his *Atkins* claim for the first time before the district court. Accordingly, that claim is not subject to deference under 28 U.S.C. § 2254(d) because it has never been "adjudicated on the merits" in state court. The district court appeared to review Walker's claim de novo, and we do the same. *See Hudson* v. *Hunt*, 235 F.3d 892, 895 (4th Cir. 2000) ("Because the claim was not adjudicated on the merits, our review is de novo.").

The district court disposed of Walker's petition by granting the state's motion to dismiss.[1] In ruling on such a motion the district court

---

[1]In section 2254 proceedings, the state's answer is filed pursuant to Rule 5 of the "Rules Governing Section 2254 cases in the United States

was obliged to "assume all facts pleaded by" Walker "to be true." *Rouse* v. *Lee*, 339 F.3d 238, 248 n. 8 (4th Cir. 2003) (holding that such a standard is required in a section 2254 proceeding when the district court grants "the State's motion to dismiss"). Instead of assuming the facts pleaded in Walker's petition to be true, however, the district court found that Walker had "failed to meet *his burden of proof* in presenting his claim of mental retardation," J.A. 253 (emphasis added), and — as explained in detail below — reached this conclusion by relying on material that was not included in Walker's petition and by either ignoring or discounting the factual allegations in the petition. Indeed, even the state admits that the district court's ruling was "in the nature of a grant of summary judgment." *Respondent's Br.* at 14. But such a ruling cannot be upheld where, as here, the facts alleged in Walker's petition and supported by his accompanying exhibits demonstrate that several material facts remain disputed.[2]

A.

While Walker's claim ultimately derives from his rights under the Eighth Amendment, whether he is mentally retarded is governed by Virginia law. As the Supreme Court observed in *Atkins*, "[t]o the extent there is serious disagreement about the execution of mentally retarded offenders, it is in determining which offenders are in fact

---

District Courts" while the motion to dismiss is filed pursuant to Fed. R. Civ. P. 12(b)(6). *See* Section 2254 Rule 11 ("The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with these rules, may be applied when appropriate, to petitions filed under these rules."); Fed. R. Civ. P. 81(a)(2) ("These rules are applicable to proceedings for . . . habeas corpus . . . to the extent that the practice in such proceedings is not set forth in the statutes of the United States, the Rules Governing Section 2254 Cases, the Rules Governing Section 2255 Proceedings, and has heretofore conformed to the practice in civil action.").

[2]To the extent that the district court's decision was in the "nature of a grant of summary judgment," the court was required to dispose of Walker's claim as set forth in Federal Rule of Civil Procedure 56. *See Johnson* v. *RAC Corp.*, 491 F.2d 510 (4th Cir. 1974) ("When a motion to dismiss . . . is founded on matters outside the pleadings, the district court is obligated to treat the motion to dismiss as one for summary judgment and to dispose of it as provided in Rule 56.").

retarded. . . . Not all people who claim to be mentally retarded will be so impaired as to fall within the range of mentally retarded offenders about whom there is a national consensus. As was our approach in *Ford* v. *Wainwright . . .* , with regard to insanity, '*we leave to the states the task of developing appropriate ways to enforce the constitutional restriction upon their execution of sentences.*'" 536 U.S. at 317 (emphasis added).[3] Accordingly, whether Walker has "stated a claim" in his petition depends on whether he has set forth facts that, if true, would demonstrate that he is mentally retarded under Virginia law.

Under Virginia law, Walker bears the burden of establishing that he is mentally retarded by a preponderance of the evidence. Va. Code § 19.2-264.3:1.1. "Mentally retarded" is defined as

> a disability, originating before the age of 18 years, characterized concurrently by (i) significantly subaverage intellectual functioning as demonstrated by performance on a standardized measure of intellectual functioning administered in conformity with accepted professional practice, that is at least two standard deviations below the mean and (ii) significant limitations in adaptive behavior as expressed in conceptual, social, and practical adaptive skills.

*Id*. With respect to the "standardized measure of intellectual functioning" referenced in subpart (i), the Virginia Code provides that "the Commissioner of Mental Health, Mental Retardation and Substance Abuse services shall maintain an *exclusive list* of standardized measures of intellectual functioning generally accepted in the field of psychological testing." Va. Code § 19.2-264.3:1.1(B)(1) (emphasis

---

[3]Walker contended before the district court that the Virginia statutory scheme enacted after *Atkins* did not apply because that scheme provides that petitioners in Walker's position "shall not be entitled to file any further habeas petitions in the Supreme Court and [their] sole remedy shall lie in federal court." J.A. 31. Walker maintained that the district court should decide his case "directly under the Eighth Amendment and under federal common law." *Id*. But the statutory provision referenced by Walker merely denotes the forum where Walker must present his claim, where, so long as it comports with *Atkins*, state law governs the question of whether Walker is mentally retarded.

added).[4] Thus, Walker must allege that his disability originated before the age of eighteen, and that it is characterized concurrently by a score two standard deviations below the mean on an approved standardized test and that there exist significant limitations in his adaptive behavior.

Walker has set forth facts that, if true, satisfy the elements of Virginia's definition of mentally retarded. Specifically, Walker's petition refers to affidavits where, after recounting evidence of his subaverage intellectual functioning, the limitations in his adaptive behavior, and the developmental origin of his disability, experts conclude that Walker satisfies the statutory definition. *See* J.A. 11 (declaration of Dr. Weinstein concluding that "[b]ased on my testing of Mr. Walker and my review of [his school] records . . . it is my professional opinion that Mr. Walker is mentally retarded according to the criteria set forth in . . . the Commonwealth of Virginia in its new statute."); *id.* 19-20 (declaration of Dr. Sautter concluding that "Darick's cognitive deficits are consistent with mental retardation as that disability is defined by . . . the Commonwealth.").

With respect to the intellectual functioning component of the definition, Walker has presented the results from the Wechsler Intelligence Scale for Children-Revised that he was administered in 1984 when he was eleven years old. J.A. 13. According to Walker, the full scale score he received — 76 — is two standard deviations below the mean. *Id.* 13-14. Walker has also submitted his full scale score of 61 on the General Ability Measure for Adults test (GAMA) that was administered in May of 2003. That score is indisputably two standard deviations below the mean. J.A. 27.

Walker has also set forth facts pertaining to the limitations in his adaptative behavior both before and after he was eighteen years old. With respect to his *conceptual skills*, Walker has identified "deficiencies in . . . language, reading, and writing," J.A. 20-21 (referencing school records), an inability to handle money, "difficulty dealing with unstructured time," and inordinate dependence on others. J.A. 22-23.

---

[4]As is relevant here, the Commissioner's list includes the Wechsler Adult Intelligence Scale (WAIS), the Wechsler Intelligence Scale for Children (WISC), and the General Ability Measure for Adults (GAMA).

With respect to his *social skills*, Walker has identified testimony from his family which suggests that "he never had friends who were his peers" and school records which indicate that "Darick has a low frustration tolerance and an inadequate control over basic impulses" and that "due to emotional immaturity, learning difficulties, and inability to control his own behavior, Darick appears to be in need of special education as a child with specific learning disabilities as well as emotional disturbance." J.A. 24. With respect to his *practical skills*, Walker has identified family member testimony which indicates that "Darick never rented an apartment or paid a bill," that he did not hold a job, and that he was dependent on family members for transportation because he did not have a drivers license and did not take the public bus. J.A. 26.

Based on the foregoing, we conclude that the facts alleged in Walker's petition, if true, would establish that he is mentally retarded and that his execution is therefore prohibited by the Eighth Amendment.

B.

The district court did not suggest that Walker had failed to state a claim; rather, it concluded that "the evidence presented by Walker is insufficient to conclude, by a preponderance of the evidence, that he is mentally retarded." J.A. 268. The district court based this finding exclusively on its determination that "all [three] of Walker's scores on the WAIS-III, *the only IQ test he was administered that is accepted in Virginia*, are above the level of mentally retarded." *Id*. 268 (emphasis added). Notably, at the time of the district court's initial ruling, the GAMA test was not on Virginia's list of acceptable measures of intellectual functioning. The addition of the GAMA test to that list formed the basis of petitioner's motion to amend the original judgment. The district court denied that motion, finding that "the GAMA test was administered to petitioner in May of 2003 when petitioner was 30 years old. The test, therefore, does not support a manifestation of retardation before the age of 18." J.A. 305.

As the foregoing references reveal, in ruling on Virginia's motion to dismiss, the district court did not assume the facts alleged by Walker in his petition to be true. The district court's judgment could not be affirmed, however, even if its determination had been in the

context of summary judgment, as the state suggests it should be construed, because the district court resolved factual disputes in favor of the moving party.

Specifically, the district court found that Walker's 1984 WISC score and his 1998 WAIS score demonstrated that he was not retarded.[5] J.A. 268. But Walker vigorously protested such conclusions in his petition. As to the 1984 WISC test, he alleged that his score of 76 actually *supports* his petition because it is two standard deviations below the mean, even though only scores of 70 or lower represent an IQ two standard deviations below the mean.[6] Walker's claim is based upon expert affidavits describing the "Flynn Effect," which posits that IQ scores rise over time and that IQ tests that are not "re-normed" to adjust for rising IQ levels will overstate a testee's IQ. Under this theory, a score of 70 on a test that has recently been re-normed will be two standard deviations below the mean of 100, while a score on the WISC given in 1984 — which had last been re-normed in 1972 — purportedly overstates a testee's IQ by over 4 points, or 1/3 of a point per year. J.A. 276-77. Thus, according to Walker, his score of 76 on the 1984 WISC should be viewed as a 72. J.A. 274-76.

But even Walker's re-normed score of 72 does not necessarily indicate that he has "perform[ed] on a standardized measure of intellectual functioning . . . two standard deviations below the mean" as set forth under the Virginia statute. On a properly normed IQ test only scores of 70 or lower are two standard deviations below the mean. Walker nonetheless maintains that 72 is a qualifying score because, he claims, any IQ test score must be considered in the context of the standard error of measurement. *See* J.A. 14. According to the affidavits submitted by Walker's experts, the American Association on

---

[5]While the district court purported to rest its judgment on Walker's three WAIS-III tests, the test that Walker took in 1984 is actually the WISC test.

[6]On IQ tests, standard deviations are measured in 30 point increments, distributed evenly on either side of the mean. Thus, a score of two standard deviations below the mean is 70 or lower while a score of two standard deviations above the mean is 130 or higher. 95% of all test-takers will score between 70 and 130, thus those scoring below two standard deviations below the mean are in the bottom 2.5%.

Mental Retardation ("AAMR") and the American Psychological Association ("APA") recognize that IQ tests have a measurement error of plus or minus five points. J.A. 276 (expert testimony that the AAMR and the APA "require measurement error to be taken into account when IQ test scores are considered"). Walker's experts therefore suggest that 72 is a qualifying score because "the AAMR and APA concur that the IQ criteria for falling two standard deviations below the mean (IQ 70) means that individuals who have a measured IQ of 65 to 75 or lower may be considered to be mentally retarded if there is evidence of poor adaptive functioning." *Id*. The state, of course, may contest Walker's experts' particular suggestions on remand and may also contest the applicability of measurement error to the inquiry of whether a petitioner has performed "at least two standard deviations below the mean" under the Virginia statute.

The district court, without much explanation, did not consider the Flynn Effect or the measurement error, stating that such evidence "does not provide a legal basis for ignoring Walker's WAIS test scores." J.A. 266. But, as the Virginia statute makes clear, the relevant question is whether Walker scored two standard deviations below the mean, a question which is directly addressed by Walker's expert opinion as to the Flynn Effect. Thus, not only did the district court resolve a factual dispute against Walker — contrary to the claims in his petition and where the facts remained materially disputed — it also refused to consider relevant evidence, namely the Flynn Effect evidence. Therefore, on remand the district court should consider the persuasiveness of Walker's Flynn Effect evidence. And if the district court does credit that evidence, it should then consider whether the Virginia statute permits consideration of measurement error in order to determine whether Walker's purported score of 72 is "two standard deviations below the mean" as set forth under that statute.

As to Walker's 1998 WAIS test, Walker claims that his score of 86 is "highly unreliable for multiple reasons" because it was administered by an inexperienced intern who now claims she made "errors in the administration and scoring of the test." J.A. 17; *id*. at 105-07. The district court rejected Walker's characterization of the test, and concluded that if all of the administrator's errors were added together, Walker would have been left with a score of 77, "above the 70-75 cutoff." J.A. 267. But Walker claims that his score cannot be recon-

structed in the manner proposed by the district court, *Petitioner's Reply Br.* at 18, and, moreover, has presented an affidavit from his expert stating that the test results are so unreliable that they should be "discarded." J.A. 113-14. In the face of this uncontested expert opinion, the district court's re-calculation of Walker's score was error.

The district court also rested its judgment on the results of Walker's March 17, 2000 WAIS-III test, administered by Dr. Sautter, where Walker received a full scale score of 77. J.A. 247. While Walker does not contest the validity of the results of this test, Dr. Sautter has submitted an affidavit, explaining that after an "opportunity to review a more comprehensive set of Darick's records . . . I conclude that Darick's cognitive deficits are consistent with mental retardation as that disability is defined by . . . the Commonwealth in its recently enacted statute." J.A. 112-13. Moreover, Walker maintains that his score of 61 on the GAMA test in May 2003 — a score that is *indisputably* more than two standard deviations below the mean — more accurately reflects his disability.[7]

In some circumstances an *Atkins* claim may properly be dismissed where a petitioner has IQ scores that are above the high-end of the intellectual functioning measurement set forth in Virginia's definition and where uncontested expert opinion verifies that such scores are an accurate measurement of a petitioner's intellectual functioning. *See, e.g.,*

---

[7]The district court discounted the results from the GAMA test because it was not administered until Walker was 30 years old and therefore did "not support a manifestation of retardation before the age of 18." J.A. 305. But, under Virginia's statute, Walker is not required to submit an IQ test to establish the "developmental origin" of his disability. Rather, such an assessment "shall be based on multiple sources of information generally accepted by the field of psychological testing . . . including, whenever available, educational, social service, medical records, prior disability assessments, parental or caregiver reports, and other collateral data." Va. Code § 19.2-264.3:1.1(B)(3). Moreover, Walker's adult IQ scores are directly relevant to the "intellectual functioning" component of Virginia's definition.

*Johnson* v. *Commonwealth*, 591
S.E.2d 47, 59 (Va. 2004) (holding that petitioner's *Atkins* claim was
frivolous because petitioner had received a 75 and 78 and because his
own expert witness stated that he was "not retarded"); *Morrisette* v.
*Commonwealth*, 569 S.E.2d 47, 56 n.8 (Va. 2002) (rejecting an *Atkins*
claim where petitioner's IQ scores were 77 and 82 and where the
evaluating psychiatrist opined that petitioner's intelligence was
"roughly below average"). Where, as here, however, a petitioner has
received IQ scores above *and* below two standard deviations below
the mean and where uncontested expert opinion suggests that he is
mentally retarded under the Commonwealth's definition, dismissal is
inappropriate. Accordingly, in this case further proceedings are neces-
sary to determine whether the preponderance of the evidence suggests
that Walker's lower scores are an accurate reflection of his intellec-
tual functioning or whether, as the state suggests, his higher scores are
dispositive.

## II.

While we conclude that the district court erred in dismissing Walk-
er's claim, we cannot conclude, on the basis of the record before us,
that Walker's execution would violate the Eighth Amendment.
Rather, further proceedings are necessary to determine whether, after
consideration of all relevant evidence, Walker has established that he
is mentally retarded as defined by the Commonwealth of Virginia.
Walker maintains that further proceedings should be before a jury or,
in the alternative, seeks an evidentiary hearing before the district
court.

### A.

Walker contends that he is entitled to a jury under both the Virginia
statutory scheme and *Ring* v. *Arizona*, 536 U.S. 584 (2002). We dis-
agree.

Walker is not entitled to a jury under the Virginia statute. Section
8.01-654.2 of the Virginia Code sets forth the procedural framework
for the resolution of *Atkins* claims filed by petitioners, such as

Walker, who were sentenced to death before April 29, 2003. The relevant portion of that statute provides as follows:

> A person proceeding under this section shall allege the factual basis for his claim of mental retardation. The Supreme Court shall consider a claim raised under this section and if it determines that the claim is not frivolous, it shall remand the claim to the circuit court for a determination of mental retardation . . . . *If the claim is before the Supreme Court on direct appeal and is remanded to the circuit court and the case wherein the sentence of death was imposed was tried by a jury*, the circuit court shall empanel a new jury for the sole purpose of making a determination of mental retardation.
>
> *If the person has completed both a direct appeal and a [state] habeas corpus proceeding under subsection C of § 8.01-654, he shall not be entitled to file any further habeas petitions in the Supreme Court and his sole remedy shall lie in federal court.*

Va. Code § 8.01-654.2 (emphasis added). As the emphasized sections make clear, the Virginia statute does not provide for a jury for claims raised in federal court.

Walker nonetheless contends that he is entitled to a jury under section 19.2-264.3:1.1(c), which provides that "in any case in which the offense may be punishable by death and is tried before a jury, the issue of mental retardation . . . shall be determined by the jury as part of the sentencing proceeding." Walker claims that his entitlement to a jury under this section cannot be severed from the other applicable portions of the section; namely the definition of "mentally retarded" and the defendant's burden of proof. But the portion of the Virginia statute that refers to a jury determination does so in the context of the appropriate procedure at sentencing in state court. It does not bear on the appropriate federal procedure governing Walker's Eighth Amendment claim that is based, in part, upon Virginia's definition of mentally retarded.

Walker further contends that his proposed interpretation of the Virginia statutory scheme is supported by the canon of constitutional

avoidance. According to Walker, an interpretation of Virginia's statute that deprives him of a jury would violate the Equal Protection clause of the Fourteenth Amendment because there is no rational basis for treating petitioners who have completed their state habeas proceedings differently than those who have not. As set forth above, Va. Code. § 8.01-654.2 permits petitioners whose convictions are final but who have not sought state habeas relief to pursue their *Atkins* claims in state court where a jury is required for all non-frivolous claims. On the other hand, petitioners, such as Walker, who have completed state habeas review must pursue their claims in federal court. Walker claims that such a distinction is "arbitrary."

Walker's Equal Protection challenge to the Virginia statute is not sustainable. As noted by the state, under the relevant Supreme Court precedent the standard applicable to Walker's challenge is whether the "classification drawn by the statute is rationally related to a legitimate state interest." *City of Cleburne* v. *Cleburne Living Center, Inc.*, 473 U.S. 432, 440-41 (1985). Just as the federal habeas statute treats petitioners filing an initial habeas petition differently than it treats those who are filing a successive petition, *see* 28 U.S.C. § 2244, so too may Virginia differentiate between petitioners who have not yet presented claims under § 8.01-654 and those who have completed their § 8.01-654 proceedings. As with the distinction at the federal level, Virginia's differentiation is reasonably related to the state's interest of efficient utilization of its judicial resources and satisfies the deferential standard set forth in *Cleburne*. This is especially so, given that Walker is entitled to present his *federal* claim in a *federal* forum.[8]

---

[8]Petitioner also maintains that Virginia's statute is arbitrary because it "treats defendants differently depending on the purely arbitrary factor [of] whether a particular defendant pursued a state habeas petition or simply let the 60-day time limit on filing a state habeas petition run without filing." *Petitioner's Br.* at 51. But the Virginia statute does not permit such gamesmanship. If a petitioner with an *Atkins* claim who has not pursued relief under § 8.01-654 fails to timely file his petition, that petition will be dismissed pursuant to § 8.01-654.1. Thus, § 8.01-654.2 does not waive the applicable filing deadlines of § 8.01-654; rather it requires submission of *Atkins* claims, when possible, "under such subsection." And, such a claim would be procedurally defaulted in federal court. *See* 28 U.S.C. §§ 2254(b)-(c). Accordingly, as with any other claim for relief under the Virginia and federal habeas statutes, petitioners must comply with applicable filing deadlines or forfeit their claims.

Nor can Walker establish entitlement to a jury under *Ring* v. *Arizona*. As an initial matter, *Ring* was decided after Walker's conviction became final and is *not* retroactive on collateral review. *See Schriro* v. *Summerlin*, 124 S. Ct. 2519 (2004) ("*Ring* announced a new procedural rule that does not apply retroactively to cases already final on direct review."). Walker suggests *Schriro* is inapplicable because he is not seeking to vacate a factual decision already made by a judge in favor of having that factual decision made by a jury; rather, he is presenting his *Atkins* claim for the first time in his petition and is therefore not seeking retroactive application of *Ring*. *Petitioner's Reply Br.* at 22-23.

But even if Walker is not seeking retroactive application of *Ring*, he is not entitled to a jury. The operative language of *Ring* provides that:

> The dispositive question . . . is one not of form, but of effect. (citation omitted). If a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact — no matter how the state labels it — must be found by a jury beyond a reasonable doubt. A defendant may not be exposed to a penalty exceeding the maximum he would receive if punished according to the facts reflected in the jury verdict alone.

536 U.S. at 602; *see also id.* at 610 ("I believe that the fundamental meaning of the jury-trial guarantee of the Sixth Amendment is that all facts essential to imposition of the level of punishment that the defendant receives — whether the statute calls them elements of the offense, sentencing factors, or Mary Jane — must be found by the jury beyond a reasonable doubt.") (Scalia, J. concurring).

Walker maintains that the factual determination of "not-retarded" is required to impose the death penalty. The Virginia statute authorizing "punishment for conviction of felony" lends some support to this view. It provides that "[t]he authorized punishments for conviction of felony are: (a) For class 1 felonies, death, *if the person so convicted* was 16 years of age or older at the time of the offense and *is not determined to be mentally retarded*." Va. Code § 18.2-10.[9] But the

---

[9]Walker was convicted of violating Va. Code § 18.2-31.1(8) which provides that "the willful, deliberate, and premeditated killing of more

finding of mental retardation does not increase the penalty for the crime beyond the statutory maximum — death. Rather, a defendant facing the death penalty may avoid that penalty if he successfully raises and proves by a preponderance of the evidence that he is mentally retarded. Va. Code § 19.2-264.3:1.2(E) and § 19.2-264.3:1.1(C). The state does not have a corollary duty to prove that a defendant is "not retarded" in order to be entitled to the death penalty. Accordingly, "an *increase*" in a defendant's sentence is not predicated on the outcome of the mental retardation determination; only a decrease. *See also In re Johnson*, 334 F.3d 403, 405 (5th Cir. 2003) ("[T]he absence of mental retardation is not an element of the sentence any more than sanity is an element of the offense.").

## B.

Walker contends that even if he is not entitled to a jury, he must, at a minimum, receive an evidentiary hearing in the district court on his *Atkins* claim. *Petitioner's Br.* at 56-60. We agree.

Walker's entitlement to an evidentiary hearing is not addressed by the federal habeas statutes. Section 2254(e)(2) does not apply because Walker has not "failed to develop the factual basis of [his] claim in State court." *See Williams* v. *Taylor*, 529 U.S. 420, 432 (2000) ("[A] failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel."). Because *Atkins* was decided after Walker's conviction became final, neither he nor his counsel can be faulted for failure to develop the factual basis of that claim.

Under Supreme Court and circuit precedent, an evidentiary hearing is required if Walker "alleges . . . facts that, if true, would entitle[ ] him to relief and establishes one of six factors set out by the Supreme

---

than one person within a three-year period" shall "constitute capital murder, punishable as a Class 1 felony."

Court in *Townsend* v. *Sain*, 372 U.S. 293 (1963)." *Fisher* v. *Lee*, 215 F.3d 438, 455 (4th Cir. 2000); *see also Cardwell* v. *Green*, 152 F.3d 331, 338 (4th Cir. 1998) ("if . . . the applicant has not failed to develop the facts in state court, the district court may proceed to consider whether a hearing is appropriate *or required* under *Townsend*.") (emphasis added). *Townsend* holds that "[w]here the facts are in dispute, *the federal court in habeas corpus must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court.*" *Townsend*, 372 U.S. at 312 (emphasis added).

The district court's refusal to hold an evidentiary hearing was error under *Townsend*. As noted above, Walker has alleged facts that would entitle him to relief and those facts remain disputed. Moreover, because he has never presented his *Atkins* claim in state court, he has not received "a full and fair evidentiary hearing" and thus easily satisfies several of the six factors mentioned in *Townsend*. *Id.* at 313 (evidentiary hearing required if "the merits of the factual dispute were not resolved in the state hearing" or "for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair hearing.").

Accordingly, on remand the district court should conduct an evidentiary hearing to determine whether Walker is mentally retarded under Virginia law. In this hearing, the district court should consider all relevant evidence, as set forth in the Virginia statute, pertaining to the developmental origin, intellectual functioning, and adaptive behavior aspects of Walker's mental retardation claim. *See* Va. Code § 19.2-264.3:1.1. The district court may ultimately conclude that its initial resolution of Walker's claim was correct; the preponderance of the evidence may indicate that Walker's scores on the 1984 WISC test, the 1998 WAIS-III test, and the 2000 WAIS-III tests are valid and greater than two standard deviations below the mean. The district court may, as well, conclude that the scores on these three tests are more reflective of Walker's intellectual functioning than his score on the GAMA test. But, whether or not the district court comes to the same conclusions upon reconsideration, Walker is entitled under law both to an evidentiary hearing in which he is afforded an opportunity to fully develop the factual basis of his mental retardation claim and

to consideration by the courts of all of the evidence that is relevant to that claim under Virginia's statutory framework.

## III.

The judgment of the district court is vacated and the case remanded for an evidentiary hearing to address whether Walker is mentally retarded under Virginia statute.

*VACATED AND REMANDED*

GREGORY, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority insofar as it holds that Walker's petition should not have been dismissed without an evidentiary hearing. I must dissent, however, from the majority's failure to recognize that Va. Code § 8.01-654.2 violates the Equal Protection Clause.

As interpreted by the majority, Virginia's statutory scheme denies to Walker what it gives freely to others with non-frivolous claims of mental retardation: assured jury review. Stated otherwise, the majority allows Virginia to treat unequally criminal defendants submitting non-frivolous claims of mental retardation for the first time by withholding its juries from those who have exhausted state remedies on *other* grounds. *See* Va. Code § 8.01-654.2 ("If the person has completed both a direct appeal and a [state] habeas corpus proceeding under subsection C of § 8.01-654, he shall not be entitled to file any further habeas petitions in the Supreme Court and his sole remedy shall lie in federal court."). Thus, Daryl Atkins and Darick Walker, despite being identically situated for present purposes, will be treated unequally: Atkins — merely because he was on direct review — will be allowed to present his retardation claim to a jury, but Walker may not. This is unconstitutional.

The majority's error begins by adopting the Warden's contention that Virginia's scheme merits merely rational-basis review. It is plain that "when state laws impinge on personal rights protected by the Constitution," *strict* scrutiny — not rational-basis review — is warranted. *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 440

(1985).[1] The Eighth Amendment's prohibition against the cruel and unusual punishment embodied by the execution of the mentally retarded is surely a fundamental, personal constitutional right. Thus, Virginia's law should be sustained only if it is "suitably tailored to serve a compelling state interest." *Id.*

Virginia's post-*Atkins* statute cannot survive such scrutiny. The Warden proffers two sides of the same "prompt finality" coin for Virginia's otherwise arbitrary distinction: avoiding delay in executions from frivolous litigation and encouraging finality of the judgments. *See* Appellee's Br. at 37 n.12 (Virginia legislature made policy choice to avoid "unnecessary delay for frivolous litigation") and at 40 n.15 ("Obviously it is a legitimate, even compelling, state interest to further the finality of criminal judgments.").

First, I doubt the Warden precisely captures Virginia's interests when it passed the statute dealing with *Atkins* claims. Evidently, the Commonwealth felt sufficiently strongly that a *jury* had to decide these factual questions[2] that it mandated a jury trial for all persons on direct appeal. *See* Va. Code § 8.01-654.2 ("If the claim is before the Supreme Court on direct appeal and is remanded to the circuit court and the case wherein the sentence of death was imposed was tried by a jury, the circuit court shall empanel a new jury for the sole purpose of making a determination of mental retardation."). At the very least, this adds nuance to Virginia's interests: it commanded its circuit courts to empanel a *jury* for some defendants, while it wished to *deny* the right to such a determination to defendants like Walker. Thus, the question should be whether Virginia's interest in promptly executing the tiny handful of death-row prisoners like Walker who had

---

[1]The majority opinion cites, but misapplies, *Cleburne* for the idea that rational basis review governs. *Ante* at 13-14. *Cleburne* establishes that mental retardation itself is not a "quasi-suspect classification" such that all laws affecting the mentally retarded merit heightened scrutiny. 473 U.S. at 442-47. *Cleburne* also recognized quite plainly, however, that strict scrutiny is warranted "when state laws impinge on personal rights protected by the Constitution." *Id.* at 440.

[2]*See Burns v. Warden of Sussex I State Prison*, 597 S.E.2d 195, 196 (Va. 2004) ("The threshold issue — whether the defendant is mentally retarded — is a factual one.").

exhausted state habeas appeals[3] is "compelling," and if so, compelling enough to justify denying these few persons a jury determination of their *Atkins* claim.

Even accepting the Warden's proffered justification as compelling, surely this scheme is not narrowly tailored; indeed, the statute seems to be an awfully clumsy means of obtaining quick executions. The Commonwealth could have allowed for an expedited state-court review of Walker's *Atkins* claim, just as they did for those of other defendants. But by short-circuiting AEDPA and pushing off Walker to federal court, Virginia denies us the benefit of its fact-finding. I seriously doubt that this *shortens* the time to execution at all. Indeed, it may well lengthen the review process by forcing federal courts — perhaps ultimately the Supreme Court — to attempt awkwardly to harmonize federal habeas procedures with both Virginia's substantive and procedural post-*Atkins* statutes.

I know of no other reason why treating Walker the same as defendants like Daryl Atkins would have been so unpardonably slow as to justify the denial of equal treatment. As the Virginia Supreme Court noted about this very statute just last year,

> The different procedures for resolving this factual issue [whether the defendant is mentally retarded] that the Warden urges are based solely on whether a capital defendant happened to have his case on direct appeal or collateral attack on April 29, 2003. To assign the finding of this fact to the trial court for one group of qualifying defendants and to either a court or a jury for another, as the Warden suggests, would treat similarly situated persons differently in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

---

[3]There appears to be only one other Virginia death-row inmate who, like Walker, exhausted state remedies on other grounds and then raised a mental retardation claim after *Atkins*. Five other death-row prisoners had completed state habeas proceedings when *Atkins* was decided, but none of them raised an *Atkins* claim and all have since been executed. Thus, it is not as if scores of cases threaten to drown Virginia's courts with frivolous retardation claims.

*Burns v. Warden*, 597 S.E.2d 195, 196 (Va. 2004)(citing *City of Cleburne*, 473 U.S. at 439).

In sum, *Atkins* did not leave the states with unbridled authority to craft procedures that would protect mentally retarded defendants. Rather, it allows the states to develop "'*appropriate* ways to enforce the constitutional restriction upon [their] execution of sentences.'" *Atkins* 536 U.S. at 317 (emphasis added). If nothing else, to be *appropriate*, procedures must comport with the Constitution. The majority allows Virginia's violation of the Equal Protection Clause by not requiring that Walker's claim, as would Atkins', be heard by a jury of his peers. I respectfully remove myself from this part of the decision and strongly encourage the district court to exercise its discretion — which this decision does not destroy — to empanel a jury to hear Walker's claim.