KNOLL, J.,
additionally concurring.
Li additionally concur with the majority opinion. The trial court did not err in finding defendant James Dunn failed to meet his burden of proving he is mentally incompetent to receive the death penalty under Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002). I write separately to address the proper application of the so-called “Flynn effect” in capital cases. Put simply, the question is whether psychologists who administer IQ tests to capital defendants should adjust those scores to reflect the tendency for nationwide IQ scores to increase an average of approximately 0.3 points per year.
The applicability of the Flynn effect in Atkins proceedings is a hotly contested legal issue, and has potentially important ramifications in Louisiana. La.C.Cr.P. art. 905.5.1 defines mental retardation, in part, by “significant limitations in ... intellectual functioning.” This has been interpreted as an IQ score of two standard deviations below the mean. State v. Williams, 2007-1407 (La.10/20/09), 22 So.3d 867, 881 n. 10, Morris v. Dretke, 413 F.3d 484, 489-90 (5th Cir.2005). In close cases, the decision of whether or not to take the Flynn effect into ^consideration could be the deciding factor in whether a defendant’s IQ score qualifies him as mentally retarded.[1]
I. Legal Approaches to the Flynn Effect
Since the U.S. Supreme Court’s decision in Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), lower courts have struggled to determine whether the Flynn effect should be applied in *476 determining a defendant’s eligibility for the death penalty. However, the issue is res nova in Louisiana.
At one end of the spectrum, some courts have accepted the Flynn effect, and even mandated its application. For instance, naval courts are required to adjust IQ scores according to Flynn’s formula. U.S. v. Parker, 65 M.J. 626, 629 (N.M. Ct.Crim. App.2007) (“the observed IQ score must be adjusted by the ‘Flynn effect.’ ”) The U.S. Fourth Circuit has criticized and reversed a district court’s decision for failure to take into account the “relevant evidence” of the Flynn effect. Walker v. True, 399 F.3d 315, 322-23 (4th Cir.2005). Yet the Walker court did not require the district court to accept the Flynn effect as true, but merely ordered it to “consider the persuasiveness of Walker’s Flynn Effect evidence” on remand. Id. The Eleventh Circuit has likewise cited with approval an expert psychologist’s testimony on the Flynn effect. Holladay v. Allen, 555 F.3d 1346, 1350 n. 4 (11th Cir.2009); Thomas v. Allen, 614 F.Supp.2d 1257, 1281 (M.D.Ala. 2009) (“A court must also consider the Flynn effect and the standard error of measurement in ^determining whether a petitioner’s IQ score falls within a range containing scores that are less than 70.”)
Other courts have taken a middle ground and left the decision of whether to credit or discredit the Flynn effect to the district court’s discretion. See State v. Burke, 2005-0hio-7020, 2005 WL 3557641 (Ohio Ct.App.2005) (A “trial court must consider evidence presented on the Flynn effect, but, consistent with its prerogative to determine the persuasiveness of the evidence, the trial court is not bound to, but may, conclude the Flynn effect is a factor in a defendant’s IQ score.”)
Still other courts, such as the Texas Court of Criminal Appeals, have expressly disapproved of the Flynn effect: “We have previously refrained from applying the Flynn effect, however, noting that it is an ‘unexamined scientific concept’ that does not provide a reliable basis for concluding that an appellant has significant sub-average general intellectual functioning.” Neal v. State, 256 S.W.3d 264, 273 (Tex. Crim.App.2008); In re Mathis, 483 F.3d 395, 398 n. 1 (5th Cir.2007)(“The Flynn Effect ... has not been accepted in this Circuit as scientifically valid.”), Thomas v. Quarterman, 335 FedAppx. 386, 390-91 (5th Cir.2009) (A state court decision imposing death penalty was not unreasonable for failure to apply the Flynn effect). The Alabama Court of Criminal Appeals also recently cited In re Mathis and expressed skepticism regarding the Flynn effect’s scientific validity. Beckworth v. State, — So.3d-,-n. 5, 2009 Ala.Crim.App. LEXIS 64 at *61 n. 5 (Ala.Crim.App.2009).
The Kentucky Supreme Court has likewise disapproved of the Flynn effect. Bowling v. Commonwealth, 163 S.W.3d 361 (Ky.2005). As the relevant statute 14contains a “bright line” IQ cutoff of 70,[2] the court reasoned it was up to the legislature to determine how an IQ score is determined. By passing a statute imposing a bright line rule, with no provision for adjustment by the court, the Kentucky legislature chose not to credit the Flynn effect. Id. at 375-76.
II. The Academic Underpinnings of the Flynn Effect
The widely differing approaches taken by the above-cited courts emphasize the difficulties courts have in determining *477 someone’s “true” IQ score. Measuring IQ score is not like measuring height. While height is an objective measurement— someone who is 5'11" will be 5'11" no matter who he stands next to — IQ scores are based on a normal distribution curve, which means an individual’s score is only meaningful in relation to the scores of the other people who took the test. See J.C. Oleson, The Insanity of Genius: Criminal Culpability and Right-Tail Psychometrics, 16 Geo. Mason L.Rev. 587, 598 (2009)
Both the Wechsler Adult Intelligence Scale (“WAIS”), administered to defendant by Dr. Gouvier and Dr. Hale, and the Stanford-Binet test, administered by Dr. Pellegrin, have a mean score of 100. Each time a new version of the WAIS test is developed, “the administration of the test to a large, and ideally heterogenous and representative, sample of individuals is used to develop norms based on age and/or grade level.” Lois A. Weithorn, Conceptual Hurdles to the Application of Atkins v. Virginia, 59 U.C. Hastings L.J. 1203, 1214 (2008). The average score of this sample group is thereafter defined as 100.
|sThe Flynn effect is named after political scientist James R. Flynn, who wrote The Mean IQ of Americans: Massive Gains 1932 to 1978, 95 Psychological Bulletin 29 (1984). Professor Flynn observed, over time, the mean IQ score in America rose at a rate of approximately 3 points per decade, or 0.3 points per year. Although the “why” and “how” of this phenomenon are hotly debated,[3] Flynn’s original observation is widely accepted.
What is not widely accepted is whether the Flynn effect should be applied to individual IQ scores. As noted above, Flynn observed a population wide increase of approximately 0.3 points per year. It does not follow that the IQ score of every single individual member of the population increases by the same amount. Flynn attempts to hand-wave away this very argument:
I also wish to call attention to another argument put forward by prosecutors, namely, that the Flynn effect is a “group phenomenon” and cannot be applied to individuals. As the reader now knows, this is just a senseless mantra. When the group making the IQ gains is composed of Americans, those gains render test norms obsolete and inflate the IQ of every individual being scored against obsolete norms.
James Flynn, Tethering the Elephant, 12 Psychology, Public Policy, and Law 170, 184 (2006). Even if we admit, for the purposes of argument, the Flynn effect “inflate[s] the IQ of every individual being scored against obsolete norms,” it most certainly does not follow that it inflates every individual’s score equally or consistently on a year to year basis. Yet proponents of the Flynn effect would have courts apply a 0.3 points per year across the board.
In Wiley v. Epps, 668 F.Supp.2d 848, 894 (N.D.Miss.2009), a federal district court explained: “a controversy about the Flynn effect exists in its application. Professionals in the field do not disagree the phenomenon exists, but rather, there is professional disagreement regarding whether to adjust an individual’s score.” The Wiley court refused to require an examining psychologist to take the Flynn effect into account, but it also refused to *478 preclude a psychologist from applying it. Id. at 894 n. 26. See also Dora W. Klein, Categorical Exclusions for Capital Punishment: How Many Wrongs Make a Right?, 72 Brooklin L.Rev. 1211, 1231 n. 89 (2007), citing I. Bruce Frumkin, Challenging Expert Testimony on Intelligence and Menial Retardation, 34 J. of Psychiatry & L. 51, 60 (2006) (“This is not to say that a psychologist should ‘adjust’ the IQ score to take into consideration the Flynn effect.”) Indeed, there is some evidence the application of Flynn’s formula to individual scores is limited primarily to defense psychologists in capital cases. See Ledford v. Head, 2008 WL 754486 *6-7, 2008 U.S. Dist. LEXIS 21635, *19 (N.D.Ga.2008) (“[EJxperts for both petitioner and respondent agreed that it is not used in clinical practice to reduce IQ scores.... Both Dr. King and Dr. Zim-mermann testified that they have never seen it utilized except in capital cases.... The Court is hesitant to apply a theory that is used solely for the purpose of lowering IQ scores in a death penalty context.”)
A second, equally troubling, flaw, comes from the data in Flynn’s own article. While the observed gains in IQ scores average approximately 0.3 points per year over the long run, they certainly do not proceed in a linear or predictable fashion. James Flynn, Tethering the Elephant, 12 Psychology, Public Policy, and Law 170, 177 (2006). The actual yearly rate of change ranges from 0.917 points 17per year to -0.117 points per year, depending on the time period and the particular version of the test used. Id.
Specifically, the 0.3 point per year increase does not neatly fit with the scores from the Wechsler WAIS-III test, the version administered to the defendant by Dr. Hale and Dr. Pellegrin. James Flynn, Tethering the Elephant, 12 Psychology, Public Policy, and Law 170, 177 (2006). See also Ledford v. Head, 2008 WL 754486, 2008 U.S. Dist. LEXIS 21635 (N.D.Ga.2008) (“[TJhe WAIS-III, in particular, does not appear to be subject to the 0.3 rate of IQ gain.... Flynn’s data suggests that the yearly gain on the WAIS-III is closer to 0.17 than to 0.3.”)
Instead, the 0.3 points per year adjustment fits more closely with data gathered from the Wechsler Intelligence Scale for Children (“AVISO”), which is designed for use from ages 6 to 16 only. James Flynn, Tethering the Elephant, 12 Psychology, Public Policy, and Law 170, 184 (2006). Defendant apparently has no WISC scores, as he did not take any formal IQ tests prior to the age of 16. Flynn admits the data on adult WAIS-III scores is “less than perfect” but argues courts should “not ignore decent data just because it would be preferable to have perfect data.” Id. Although courts cannot demand “perfect data” of anyone, we can and indeed must require a high level of scientific reliability before we accept a theory. In my opinion, the Flynn effect does not reach the requisite level of reliability as applied to the IQ scores of individual adult defendants.
III. Conclusion
I agree with the American Association on Mental Retardation that it is “critically important to use standardized tests with the most updated norms.” Mental Retardation: Definition, Classification, and Systems of Supports 56 (10th ed.2002). Courts conducting Atkins hearings may take into account when a ^testifying psychologist has used an obsolete or outdated IQ test. However, whether the “Flynn effect” applies to individual IQ scores remains speculative, and it would be inappropriate to apply Dr. Flynn’s recommended 0.3 point per year deduction to defendant’s *479 IQ scores for the purposes of La.C.Cr.P. 905.5.1.

. At the outset I note, even if the Flynn effect is applied to defendant's IQ scores as recommended by the defense expert, defendant’s adjusted scores are not so low as to require finding he is mentally retarded under Atkins. Moreover, Louisiana does not determine whether a defendant is mentally retarded by applying a strict numerical cutoff to IQ scores. We also must take into account the defendant’s "adaptive behavior as expressed in conceptual, social, and practical adaptive skills.” La.C.Cr.P. 905.5.1. The Flynn effect has no bearing on defendant’s conceptual, social, or practical adaptive skills.

. See KRS § 532.130(2): " 'Significantly sub-average general intellectual functioning’ is defined as an intelligence quotient (I.Q.) of seventy (70) or below.” Notably, Louisiana law does not impose a strict cutoff for IQ scores.

. Flynn admits "psychologists are still evaluating the significance of the Flynn effect,” but in his opinion this uncertainly "does not mean that we should wait for some distant day before applying our knowledge of the rate of IQ gains to adjust the IQ scores of defendants in current cases.” James Flynn, Tethering the Elephant, 12 Psychology, Public Policy, and Law 170, 175 (2006).