**UNITED STATES of America,**

v.

**Ahmed Muse SALAD, Defendant.**

**Criminal No. 2:11cr34.**

United States District Court, E.D. Virginia, Norfolk Division.

April 10, 2013.

Benjamin L. Hatch, Brian J. Samuels, Joseph E. DePadilla, Assistant United States Attorney's, Norfolk, VA, for Plaintiff United States of America.

Larry Mark Dash, Office of the Federal Public Defender, Norfolk, VA, Claire G. Cardwell, Esquire, Richmond, VA, for Defendant.

### *MEMORANDUM ORDER*

REBECCA BEACH SMITH, Chief Judge.

■ This matter comes before the court on Defendant Ahmed Muse Salad's Motion for Continuance ("Motion"), ECF No. 589, filed on March 22, 2013. The Motion, which co-Defendants Abukar Osman Beyle and Shani Nurani Sheikh Abrar do not join,[1] asks the court to delay the trial for six to twelve months. Salad requests this time to develop evidence in support of his claim that his intellectual disability precludes imposition of the death penalty, pursuant to 18 U.S.C. § 3596(c) and *Atkins v. Virginia,* 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002).[2] The Mo-

---

1. *See* Mot. at 1 n. 1 ("Counsel for co-defendants Shani Nurani Shiekh Abrar and Abukar Osman Beyle do not join in this motion, and advise that they take no position on it.").

2. Neither the Eighth Amendment nor the Federal Death Penalty Act prohibits the *trial* of mentally disabled defendants; they prohibit only the *execution* of such defendants. *See, e.g., United States v. Wilson,* No. 04–CR–

tion asks the court to suspend the deadlines set forth in the agreed Order Regarding *Atkins* Procedures, entered on February 22, 2013, and to schedule a hearing to determine a new timeline for the case. *See* Mot. at 1, 11. The United States filed a brief in opposition ("Response"), ECF No. 590, on March 29, 2013. Salad filed a Reply, ECF No. 595, on April 3, 2013. The issue is now ripe for review.[3]

## I. BACKGROUND

To place this request in context, the court first provides a brief synopsis of the scheduling process to date. Next, the court outlines the requirements for establishing a claim of intellectual disability and explains their relevance to the instant Motion.

### A. Scheduling Procedures

Since the initial Indictment was filed in March 2011, the court has taken steps to accommodate the logistical challenges of this case without compromising the efficient administration of justice. The court has continued the trial date multiple times in response to changing circumstances of the case. *See* Order, Apr. 11, 2011, ECF No. 125, 779 F.Supp.2d 509 (E.D.Va.2011), (certifying case as "complex" pursuant to 18 U.S.C. § 3161(h)(7)(B)(ii) and continuing trial from May 17, 2011, to November 29, 2011); Order, July 20, 2011, ECF No. 267 (continuing the trial date generally in light of the superseding indictment, which contained death-eligible charges and special findings pursuant to 18 U.S.C. §§ 3591–92).

On April 17, 2012, the United States filed a notice of intent to seek the death penalty; the notice was unsealed on May 1, 2012. Thereafter, the court developed multiple detailed scheduling timetables, all in close consultation with counsel. *See, e.g.,* Order, May 23, 2012, ECF No. 463, 2012 WL 5894387 (discussing results of status conference and setting trial date of June 3, 2013); agreed Order for Motion Cutoff Dates, June 22, 2012, ECF No. 476; agreed Order Regarding Mental Health Evidence ("Mental Health Order"), Sept. 18, 2012, ECF No. 508 (establishing notice deadlines and mental health evaluation procedures). Most relevant to the instant Motion, the court entered an agreed Order Regarding *Atkins* Procedures ("*Atkins* Order"), ECF No. 570, on February 22, 2013.

### B. Proving Intellectual Disability

■ Execution of a mentally disabled defendant is forbidden by statute and the Eighth Amendment. *See* 18 U.S.C. § 3596(c); *see also Atkins,* 536 U.S. at 307, 122 S.Ct. 2242. *Atkins* left the definition of mental retardation to the states and, in the context of the Federal Death Penalty Act, to lower federal courts. *See, e.g., United States v. Sablan,* 461 F.Supp.2d 1239, 1240–41 (D.Colo.2006). Trial courts uniformly ground their analysis in a three-pronged test, suggested by *Atkins,* to determine whether a defendant "fall[s] within the range of mentally retarded offenders about whom there is a national consensus." *Atkins,* 536 U.S. at 317, 122 S.Ct. 2242. The prongs of that test are: (1) "subaverage intellectual functioning," generally measured by IQ testing; (2) "significant

---

1016(NGG), 922 F.Supp.2d 334, 336-37, 2013 WL 452420, at *2 (E.D.N.Y. Feb. 7, 2013) (citing *Atkins,* 536 U.S. at 318, 122 S.Ct. 2242). Accordingly, a finding that Salad is mentally disabled would affect only the eligibility and selection phases of trial, not the guilt/innocence phase. *See generally* Mem. Order at 2–3, Mar. 29, 2013, ECF No. 591 (establishing three phases of trial).

**3.** The court's Calendar Clerk contacted counsel on Monday, April 8, 2013, to inform that no continuation of the previously set *Atkins* deadlines would be granted and that a written opinion to this effect would follow on or before April 12, 2013. This opinion so follows and sets forth the court's reasons for denial of the Motion.

limitations in adaptive skills such as communication, self-care, and self-direction"; and (3) onset of disability before age 18. *Id.* at 318, 122 S.Ct. 2242.

The Motion focuses on the second prong: adaptive skills limitations. "Adaptive behavior is a broader category, and more amorphous, than intellectual functioning." *United States v. Davis,* 611 F.Supp.2d 472, 491 (D.Md.2009). Accordingly, adaptive skills analysis often requires detailed investigation of a defendant's background, especially in the absence of objective documentary evidence or standardized testing. *See* Reply at 2–3 (collecting cases); Resp. at 8 (discussing the usual forms of documentary evidence). The practical difficulties of obtaining such information from Somalia, and defining the baseline standards by which a rural Somali defendant's adaptive skills should be judged, represent the predicate for this Motion.

## II. MOTION AND ARGUMENT

Salad correctly notes that both the Mental Health Order and the *Atkins* Order permitted the parties to seek adjustments to the deadlines, if circumstances warranted departure from the planned timeline. *See* Mot. at 10; Mental Health Order ¶ 10; *Atkins* Order at 2. The circumstances described in this Motion, however, do not justify a six- or twelve-month continuance.

██ Salad devotes much of the Motion to describing the political violence in Somalia and the resulting challenges his defense team has faced in conducting its investigation. *See* Mot. at 4–9. As a result of those circumstances, the defense team did not experience much success from their in-country investigation until approximately August 2012, when they were able to interview members of Salad's family. *See* Mot. at 10; Reply at 3–6; Reply Ex. 1 (declaration of Bridget Prince). But defense counsel understood those challenges when they agreed to the deadlines set forth in the Orders described above, particularly the agreed *Atkins* Order of February 22, 2013. Therefore, Salad must justify this request with reference to circumstances that have changed since entry of the *Atkins* Order.

He fails to do so. The only change in circumstances that occurred between the *Atkins* Order and the instant Motion, filed just four weeks thereafter, was the involvement of Dr. James R. Patton, an adaptive skills specialist. *See* Mot. Ex. 2 at 5 (providing an investigation chronology). Salad reports that Dr. Patton has helped the defense team analyze the data collected since their investigatory breakthrough in late 2012, when they made contact with Salad's family members and acquaintances in Somalia. *See* Reply at 1–2; Reply Ex. 3 ("Patton Declaration"). Since being retained, Dr. Patton has developed baseline standards to measure the adaptive skills of nomadic Somalis. *See* Patton Decl. ¶¶ 14, 19–20. Having used Dr. Patton's expertise to focus the inquiry, the defense team now seeks additional time to conduct a follow-up investigation and questioning of Salad's family members and acquaintances in Somalia. *See* Reply at 4. First, the necessity for such follow-up is questionable, given that Dr. Patton must have relied on some studies to develop his baseline standards. *See* Patton Decl. ¶¶ 14, 19. Second, given the current tumultuous situation in Somalia, and the nomadic existence of Salad's family and acquaintances, who were previously located, it is highly doubtful that Salad's defense team can accomplish the task they seek to undertake, directly or through an agent, or improve upon the research already conducted and relied upon by Dr. Patton. The Motion simply does not persuade the court that this questionable follow-up research justifies delaying the trial for another six to twelve months, perhaps even longer.

Moreover, the court must also consider the costs of such a significant delay. *See, e.g., United States v. Henderson*, 41 Fed. Appx. 651, 652 (4th Cir.2002) (finding decision on continuance to be within court's discretion, absent "unreasoning and arbitrary" adherence to deadlines (quoting *Morris v. Slappy*, 461 U.S. 1, 11–12, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983))). In this case, those costs would include, *inter alia*, restarting a complex jury selection process; expending limited resources for additional attorney time, travel costs, and expert services; and setting a trial date three years, or more, after the events giving rise to the charges, thereby creating an unnecessary risk of fading recollections of fact witnesses. Finally, the defense team has not convinced the court that the costs of delay and the expenditures associated therewith have any reliable probability of success, considering the nature of the follow-up activities sought in Somalia. *Compare* Mot. at 4 (predicting that the defense team will "comfortably complete its adaptive skills investigation within six to 12 months"), *with* Reply Ex. 2 ¶ 9 ("In addition we continue to experience problems peculiar to investigation in places such as Somalia."), *and* Mohammed Ibrahim & Jeffrey Gettleman, *Popular Restaurant Is Hit by Bomb in Somali Capital*, N.Y. Times, Feb. 17, 2013, at A12; *see supra* at 6.

Although the court understands—and appreciates—the emphasis on methodolog-ical rigor in analyzing Salad's adaptive skills, the court need not delay the trial for an expert to attain absolute certainty, if such a confidence level is even feasible. *Cf.* Patton Decl. ¶¶ 16–17 ("In my professional opinion, [existing] information such as this offers *significant reason* to believe that Mr. Salad in fact demonstrated critical adaptive skills deficits.... My hesitation now in offering a *firmer* conclusion stems primarily from the added importance of respondent information ....") (emphasis added).[4] In sum, the Motion fails, at this juncture, to justify the substantial burdens detailed herein of continuing the trial date. The substantial burdens here clearly outweigh any benefit that *might* result. Accordingly, the Motion is **DENIED**.

### III. POSSIBILITY OF RENEWAL AFTER THE *ATKINS* HEARING

Salad may, nevertheless, renew the Motion pending the outcome of the *Atkins* hearing. Briefing on the *Atkins* claim shall proceed in accordance with the agreed *Atkins* Order, with the Defendant's initial brief due by Monday, April 15, 2013. A hearing on the *Atkins* motion will be scheduled for the week of May 6, 2013.[5]

The court expects complete and thorough argument on each prong of the *Atkins* claim. If the court finds, based on the evidence presented,[6] that Salad is in-

---

**4.** Dr. Patton might benefit generally by furthering his studies on locale in Somalia, or attempting to do so, but that benefit certainly is not paramount to the court's consideration of the Motion.

**5.** The court assumes, for purposes of scheduling, that the *Atkins* briefs will warrant an evidentiary hearing. The parties appear to disagree about the viability of Salad's *Atkins* claim. *See* Resp. at 2 n. 1 ("[T]he government notes that it does not believe defendant Salad has a meritorious *Atkins* claim."). Res-

olution of disputed expert testimony will likely require a hearing. *See, e.g., Walker v. True*, 399 F.3d 315, 323–24 (4th Cir.2005).

**6.** The consensus among courts conducting *Atkins* hearings is that the defendant's burden is only a preponderance of the evidence. *See, e.g., United States v. Hardy*, 762 F.Supp.2d 849, 852 (E.D.La.2010); *Davis*, 611 F.Supp.2d at 474; *Sablan*, 461 F.Supp.2d at 1242–43; *United States v. Nelson*, 419 F.Supp.2d 891, 894 (E.D.La.2006).

tellectually disabled and, therefore, ineligible for the death penalty, then this Motion's arguments will be moot. If, however, the court finds that the evidence is insufficient to determine the merits of the *Atkins* claim, counsel for Salad shall be prepared to explain two issues: what tasks, if any, remain unaccomplished in the adaptive skills investigation; and how, specifically, the defense team plans to accomplish those tasks with any reasonable probability of success. Counsel shall be prepared to present such information and planning, if directed by the court, at the time of the *Atkins* hearing. The court will consider those submissions in determining the appropriate course of action.

## IV. CONCLUSION

For the reasons stated above, the Motion is **DENIED**. The court will consider a renewed motion, if appropriate, upon resolution of the question whether the evidence is sufficient to determine the existence of intellectual disability, after the *Atkins* hearing. The parties are **DIRECTED** to contact the Calendar Clerk, within five (5) days of the date of this Order, to confirm the dates of the *Atkins* hearing. In light of the upcoming *Atkins* hearing, the request for a separate hearing on the instant Motion is **DENIED**.

The Clerk is **DIRECTED** to forward a copy of this Memorandum Order to counsel for Defendants Salad, Beyle, and Abrar, and to the United States Attorney at Norfolk.

**IT IS SO ORDERED.**

