PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ANDREW MARK HUDSON,
　　　　　*Petitioner-Appellant,*

v.

J. R. HUNT; NORTH CAROLINA,
　　　　　*Respondents-Appellees.*

No. 99-7314

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Terrence W. Boyle, Chief District Judge.
(CA-99-12-5-HC-BO)

Argued: November 2, 2000

Decided: December 20, 2000

Before WILKINSON, Chief Judge, and WILKINS and
MOTZ, Circuit Judges.

Reversed and remanded by published opinion. Judge Wilkins wrote
the opinion, in which Chief Judge Wilkinson and Judge Motz joined.

## COUNSEL

**ARGUED:** Lathrop B. Nelson, III, Appellate Litigation Clinic, UNI-
VERSITY OF VIRGINIA SCHOOL OF LAW, Charlottesville, Vir-
ginia, for Appellant. John Gibbes Barnwell, Assistant Attorney
General, NORTH CAROLINA DEPARTMENT OF JUSTICE,
Raleigh, North Carolina, for Appellees. **ON BRIEF:** Neal L. Walters,
Appellate Litigation Clinic, UNIVERSITY OF VIRGINIA SCHOOL

OF LAW, Charlottesville, Virginia, for Appellant. Michael F. Easley, Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellees.

---

## OPINION

WILKINS, Circuit Judge:

Andrew Mark Hudson appeals an order of the district court denying his petition for habeas corpus relief, *see* 28 U.S.C.A. § 2254 (West 1994 & Supp. 2000). We granted a certificate of appealability, *see* 28 U.S.C.A. § 2253(c) (West Supp. 2000), limited to the issue of whether Hudson's attorneys were constitutionally deficient for failing to file a direct appeal of Hudson's convictions and sentence. In light of the recent decision of the Supreme Court in *Roe v. Flores-Ortega*, 120 S. Ct. 1029 (2000), we conclude that counsel were constitutionally deficient for failing to consult with Hudson regarding an appeal. Accordingly, we reverse the decision of the district court and remand for a determination of whether Hudson was prejudiced by his attorneys' deficient performance.

I.

In February 1998, Hudson was convicted by a North Carolina jury of possession of cocaine and maintenance of a dwelling for keeping, using, and selling controlled substances. Following the jury verdict, Hudson pled guilty to being a habitual offender. Hudson did not appeal his convictions or sentence.

In October 1998, Hudson filed a pro se motion for appropriate relief (MAR) in state court. Among other things, Hudson claimed that trial counsel, John Duke and Geoffrey Hulse, were ineffective for failing to file a direct appeal. Hudson stated that "having stood trial by jury . . . [he] assumed counsel would appeal." J.A. 28 (emphasis omitted). The MAR court denied relief, stating that Hudson's motion "consist[ed] only of general and conclusory allegations" and did not satisfy the requirements of North Carolina law. *State v. Hudson*, No. 95 C.R.S. 18514, slip op. at 1 (N.C. Gen. Ct. of Justice Oct. 29, 1998).

Thereafter, Hudson filed this federal habeas action, again proceeding pro se. As in his MAR, Hudson included a claim that counsel were ineffective for failing to file a direct appeal. The State moved for summary judgment and submitted affidavits from Hudson's former attorneys in support of the motion. In pertinent part, Duke's affidavit stated as follows:

> During [a] conference [following Hudson's conviction and before his plea to being a habitual felon] Mr. Hudson asked us whether or not he could appeal from the case. I specifically told Mr. Hudson that I was past retirement age, and that I did not do any appellate work, and that I was not in a position to appeal the decision. Mr. Hulse also stated that he would not be in a position to appeal the case either. I told Mr. Hudson that I did not do *any* post-conviction matters, and that I had not done any appellate work in several years.

J.A. 62. The pertinent portion of Hulse's affidavit stated as follows:

> . . . Mr. Hudson, being a habitual felon, was well aware of his right to appeal at the end of any jury trial. In addition to his own knowledge as to how the appeal process works, there was a discussion in the backroom of the courtroom after he was found guilty . . . that Mr. Duke did not handle appeals and that I was not interested in handling the appeal because I did not feel that there was anything to appeal. It is my recollection that at no time did Mr. Hudson indicate that he wanted to appeal, he was just questioning whether he had a right to appeal. . . . At no time did anyone indicate to me that I was to pursue an appeal . . . .

J.A. 63-64. Hudson submitted a responsive affidavit, in which he stated:

> Upon . . . talking with my two attorneys' [sic] in the back confence [sic] room I had ask [sic] did I have the right to an appeal. Geff Hulse said because he was getting two years off my sentence I didn't have that right. But I still request it [sic] an appeal, and wanted them to present that information before the court.

J.A. 95.

The district court denied relief, reasoning that Hudson's attorneys had informed him of his appellate rights and that they did not do appellate work. The court also concluded that "[t]he trial transcript support[ed]" counsel's assertion that Hudson did not inform them that he wanted to appeal. J.A. 102.

## II.

Before turning to the question of whether Hudson's constitutional rights were violated, we first consider our standard of review. Because Hudson filed his federal habeas petition after the April 24, 1996 enactment of the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996, Pub. L. No. 104-132, 110 Stat. 1214, the amendments to 28 U.S.C.A. § 2254 effected by § 104 of the AEDPA govern the resolution of this appeal. *See Slack v. McDaniel*, 120 S. Ct. 1595, 1602 (2000). As amended by the AEDPA, § 2254 instructs in pertinent part that we may not grant habeas relief with respect to claims "adjudicated on the merits in State court proceedings" unless the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C.A. § 2254(d)(1). Here, however, the MAR court did not deny Hudson relief on the merits of his ineffective assistance of counsel claim, but rather dismissed it for failure to comply with state procedural rules.[1] Because the claim was not

---

[1] It thus appears that this claim is procedurally defaulted. *See Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). Ordinarily, we are precluded from considering the merits of a defaulted claim absent a showing of cause and prejudice or a fundamental miscarriage of justice. *See Harris v. Reed*, 489 U.S. 255, 262 (1989). However, the rule that a federal court will not consider a defaulted claim is not a jurisdictional one; hence, a state may waive a default by failing to assert it in federal court. *See Yeatts v. Angelone*, 166 F.3d 255, 260-61 (4th Cir.), *cert. denied*, 526 U.S. 1095 (1999). Nevertheless, we possess discretion to decline to consider the merits of a defaulted claim notwithstanding the State's failure to assert the default. *See id.* at 261-62. In determining whether to exercise this discretion, the court should consider, *inter alia*, whether the failure to raise the default was intentional or inadvertent; the complexity of

adjudicated on the merits, our review is de novo. *See Fisher v. Lee*, 215 F.3d 438, 445 (4th Cir. 2000).

The Sixth Amendment entitles a criminal defendant to effective assistance of counsel on direct appeal. *See Restrepo v. Kelly*, 178 F.3d 634, 639 (2d Cir. 1999) (citing *Evitts v. Lucey*, 469 U.S. 387, 396 (1985)). The adequacy of counsel's performance on direct appeal is judged according to the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984): The petitioner must demonstrate that counsel's performance fell below an objective standard of reasonableness and that he suffered prejudice as a result. *See United States v. Mikalajunas*, 186 F.3d 490, 493 (4th Cir. 1999), *cert. denied*, 120 S. Ct. 1283 (2000).

*Roe v. Flores-Ortega* clarified the application of the *Strickland* standard to a claim that an attorney was constitutionally deficient for failing to file a notice of appeal. In the absence of a direct instruction from the defendant to appeal,[2] the question of whether counsel's failure to appeal is constitutionally deficient depends upon "whether counsel in fact consulted with the defendant about an appeal." *Roe*, 120 S. Ct. at 1035. The Court emphasized that it "employ[ed] the term 'consult' to convey a specific meaning—advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* If counsel has consulted with the defendant, the failure to file an appeal is defi-

---

the default issue vis a vis the complexity of the merits; and whether the petitioner has had an opportunity to address the question of default and to assert cause and prejudice or a miscarriage of justice to excuse the default. *See id.* at 262.

At oral argument, the State expressly declined to assert the default as a ground for our decision, in spite of acknowledging that the claim was defaulted. Thus, the State's failure to raise the default was unquestionably intentional. We therefore decline to recognize the default of Hudson's claim. *See id.* (cautioning that "when a state intentionally has declined to pursue the defense for strategic reasons, the court should be circumspect in addressing the issue").

[2]Hudson argues only that counsel were constitutionally deficient for failing to consult with him regarding an appeal.

cient only if it contradicts the defendant's instruction to appeal. *See id.* If, on the other hand, counsel has failed to consult, the court must consider whether this failure constitutes deficient performance. *See id.* In making this determination, a court should consider whether "(1) . . . a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), [and] (2) . . . [whether] this particular defendant reasonably demonstrated to counsel that he was interested in appealing."[3] *Id.* at 1036.

If the court determines that counsel was ineffective for failing to consult with the defendant regarding an appeal, it must then determine whether counsel's deficient performance prejudiced the defendant. In order to show prejudice, "a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 1038. In determining whether a defendant has made this showing, it will often be "highly relevant" whether there are nonfrivolous grounds for appeal or the defendant promptly expressed a desire to appeal. *Id.* at 1039. Importantly, while the prejudice inquiry to some extent overlaps the deficiency inquiry, they are not coextensive. *See id.* For example, a defendant may establish deficient performance by demonstrating that he indicated an interest in appealing (thereby triggering a duty to consult); however, "such evidence alone is insufficient to establish that, had the defendant received reasonable advice from counsel about the appeal, he would have instructed counsel to file an appeal." *Id.* Also, a mere inability to identify nonfrivolous grounds for appeal does not automatically preclude a defendant from showing prejudice, particularly when a habeas petition is filed by an indigent, pro se defendant. *See id.* at 1040 (explaining that "it is unfair to *require* an indigent, perhaps *pro se*, defendant to demonstrate that his hypothetical appeal might have had merit before any advocate has ever reviewed the record in his case in search of potentially meritorious grounds for appeal").

Here, it is clear that Hudson's attorneys did not consult with him regarding an appeal and that their failure to do so was constitutionally

---

[3]The Court expressly declined to impose any bright-line test, noting that the circumstances may be such that even a failure to consult would not render counsel's performance deficient. *See id.* at 1036.

deficient. The undisputed facts demonstrate that Hudson inquired about his right to appeal, thereby triggering a duty to consult. Hudson's attorneys failed to fulfill this obligation. Rather, they simply informed him that they did not do appellate work and would not appeal his case. There was no discussion of the costs and benefits of an appeal. And, it should go without saying that Hulse was deficient in assuming that Hudson was aware of his appellate rights because he had previously been involved with the criminal justice system.

Having determined that Hudson's attorneys were constitutionally deficient for failing to consult with him regarding an appeal, we conclude that the appropriate course is to remand for the district court to decide in the first instance whether Hudson was prejudiced by his counsel's deficient performance.

## III.

In sum, we conclude that Hudson's attorneys were constitutionally deficient for failing to consult with him regarding the filing of an appeal. We therefore reverse the decision of the district court and remand for further proceedings not inconsistent with this opinion.

*REVERSED AND REMANDED*