Filed:  December 23, 2009

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 08-6331
(8:07-cv-00727-JFA)


ROGER O'NEILL BOSTICK, a/k/a Rodgers O'Neill Bostick,

Petitioner - Appellant,

v.

FNU STEVENSON, Warden, Broad River Correctional Institution,

Respondent - Appellee.


O R D E R


The court amends its opinion filed December 17, 2009, as follows:

On the cover sheet, district court information section -- the name of "G. Ross Anderson, Jr., Senior District Judge" is deleted and is replaced by "Joseph F. Anderson, Jr., District Judge."

For the Court – By Direction

/s/ Patricia S. Connor
Clerk

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ROGER O'NEILL BOSTICK, a/k/a
Rodgers O'Neill Bostick,

*Petitioner-Appellant,*

v.

FNU STEVENSON, Warden, Broad
River Correctional Institution,

*Respondent-Appellee.*

No. 08-6331

Appeal from the United States District Court
for the District of South Carolina, at Anderson.
Joseph F. Anderson, Jr., District Judge.
(8:07-cv-00727-JFA)

Argued: October 30, 2009

Decided: December 17, 2009

Before GREGORY, SHEDD, and DUNCAN,
Circuit Judges.

Reversed and remanded by published opinion. Judge Gregory
wrote the opinion, in which Judge Shedd and Judge Duncan
joined.

## COUNSEL

**ARGUED**: Daniel Vandergriff, WAKE FOREST UNIVER-
SITY SCHOOL OF LAW, Appellate Advocacy Clinic,

Winston-Salem, North Carolina, for Appellant. William Edgar Salter, III, OFFICE OF THE ATTORNEY GENERAL, Columbia, South Carolina, for Appellee. **ON BRIEF:** John J. Korzen, Brian J. Conley, Third Year Law Student, Matthew J. Monteith, Third Year Law Student, WAKE FOREST UNIVERSITY SCHOOL OF LAW, Appellate Advocacy Clinic, Winston-Salem, North Carolina, for Appellant. Henry Dargan McMaster, Attorney General, Donald J. Zelenka, Assistant Deputy Attorney General, OFFICE OF THE ATTORNEY GENERAL, Columbia, South Carolina, for Appellee.

---

**OPINION**

GREGORY, Circuit Judge:

Roger O'Neill Bostick ("Bostick"), appeals the district court's awarding summary judgment to the warden in his petition for a writ of habeas corpus. We issued a certificate of appealability to address Bostick's ineffective assistance of counsel claim pursuant to 28 U.S.C. § 2253(c) (2006), and now agree with Bostick that the state procedural ground under which the district court found his claim to have been procedurally defaulted was not consistently applied at the time of his state proceedings.[1] Furthermore, we find that the performance of Bostick's trial counsel was constitutionally deficient because counsel did not consult with Bostick about an appeal following his conviction. We therefore reverse the district court's grant of summary judgment and remand to the district court with instructions that it issue the writ of habeas corpus.

---

[1]Bostick alternatively argues that the state supreme court's summary denial of his petition for certiorari, given the procedural posture of his case, did not constitute an actual dismissal on state grounds as required under the Supreme Court's decision in *Coleman v. Thompson*, 501 U.S. 722 (1991) and its progeny. We need not decide this question, because even if the state court actually relied upon a state ground, Rule 59(e) was plainly inadequate.

## I.

In September 2001, Bostick was convicted of murder and sentenced to thirty years imprisonment in South Carolina. Prior to sentencing, Bostick told his daughter in open court, "Don't worry, I'll get a appeal [sic], don't worry." (J.A. 249.)[2] Bostick never explicitly told trial counsel to file an appeal after trial, however, and counsel never did so.

In March 2002, Bostick filed a pro se, post-conviction-relief ("PCR") application alleging, among other things, that the performance of his trial counsel was constitutionally deficient because counsel did not consult with him about an appeal. At the PCR hearing in June 2004, Bostick reiterated that trial counsel never discussed with him whether or not to file an appeal and that he never requested that counsel file one. His then-wife also testified that she asked counsel about an appeal and he told her, "I can't do an appeal because it was a jury trial." (J.A. 162-63.) Counsel denied saying that he could not appeal, but acknowledged that he told Bostick's wife, "there's been a jury trial. The jury has spoken. What possible grounds are there for an appeal?" (J.A. 186.) Counsel did not testify as to any post-conviction consultation with Bostick regarding an appeal, but did say that before trial Bostick told him, "that he was going to be satisfied with what the jury come up with, win, lose, or draw, and that would be the end of it." (J.A. 186-87.) Counsel then said that he agreed with Bostick's assessment.

The PCR court denied Bostick relief in August 2004. Though it addressed several claims, it did not address whether counsel was ineffective for not discussing an appeal with Bostick. Bostick, this time through counsel, petitioned the South Carolina Supreme Court for certiorari in October 2005,

---

[2]Citations to (J.A. __) refer to the Joint Appendix filed by the parties upon appeal.

but the court summarily denied his petition in January 2007. (J.A. 264.)

Bostick then, once again pro se, filed a habeas petition in the United States District Court in South Carolina, alleging, among other things, that counsel was ineffective for not consulting with him about a direct appeal and arguing that he was entitled to a belated appeal as a result. The warden moved for summary judgment. The warden conceded that Bostick exhausted his claim in state court, but insisted that the claim was procedurally defaulted, because Bostick had not asked the PCR court to amend its opinion to address his ineffective-assistance claim before petitioning for certiorari. The warden alternatively argued that even if it could be considered, Bostick's claim was unsupported by the record. A magistrate judge recommended that summary judgment be granted on this claim on the grounds that Bostick's claim was procedurally defaulted, and the district court agreed. Bostick timely appealed.

## II.

We review a district court's grant of a motion for summary judgment in habeas proceedings de novo. *Frye v. Lee*, 235 F.3d 897, 902 (4th Cir. 2000). Where a petitioner's claim has been "adjudicated on the merits" by a state court, section 104 of the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (codified at 28 U.S.C. § 2254(d)), precludes our granting relief unless the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). In a case like Bostick's, however, where the state courts did not reach the claim's merits and instead ruled on procedural grounds, we review the claim de novo. *Hudson v. Hunt*, 235 F.3d 892, 895 (4th Cir. 2000).

III.

Bostick's appeal raises two related issues: (A) whether or not his claim is procedurally defaulted due to his conceded-failure to comply with South Carolina Rule of Civil Procedure 59(e) and (B) whether or not his trial counsel was in fact ineffective for not consulting with him about an appeal following his conviction. We address each issue in turn.

A.

Bostick first alleges that the district court erroneously deemed his ineffective-assistance claim procedurally defaulted. He admits that he did not comply with Rule 59(e)'s requirement that he ask the PCR court to amend its opinion before petitioning the state supreme court for certiorari, but he nonetheless argues that his failure to do so should not procedurally bar his claim. We agree with Bostick that at the time of his state proceedings, South Carolina Rule 59(e) was not consistently applied by the state's courts, and that as a result, his failure to comply with the rule does not prevent him from pursuing his claim here.

Federal courts may not hear a section 2254 claim if a state court disposed of the claim on adequate and independent state-law grounds, unless the petitioner can show cause and prejudice for, or a fundamental miscarriage of justice resulting from, failure to comply with the applicable rule. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Wilson v. Moore*, 178 F.3d 266, 272 (4th Cir. 1999). This rule protects the state's interest in the finality of its judgments and promotes respect for the state-court system. *Coleman*, 501 U.S. at 750. For a state-law ground to be "adequate," though, it must be applied regularly or consistently. *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988); *Brown v. Lee*, 319 F.3d 162, 169 (4th Cir. 2003). Where a procedural rule is inconsistently applied, we will not allow a state's invocation of that rule "to thwart federal habeas review of constitutional issues that the 'adequacy'

requirement was designed to prevent." *Brown*, 319 F.3d at 170.

It is quite clear to us that Rule 59(e) was not consistently applied by the South Carolina courts at the time of Bostick's PCR proceedings. Indeed, in 2001 we explicitly noted that Rule 59(e) was inconsistently applied and that it was inadequate to preclude federal review. *Pearson v. Harrison*, 9 Fed. App'x 85, 87 (4th Cir. 2001).[3] And though the warden urges us to find that the South Carolina Supreme Court has clarified its jurisprudence and begun applying the rule more consistently, the state court did not do so until well-after Bostick filed his petition for certiorari. *See Marlar v. South Carolina*, 653 S.E.2d 266 (S.C. 2007), *rev'g* 644 S.E.2d 769 (S.C. Ct. App. 2007).

In *Marlar*, which the warden repeatedly cites for the proposition that Rule 59(e) is consistently applied, the South Carolina Court of Appeals detailed the South Carolina Supreme Court's past willingness to "overlook" Rule 59(e) violations "in order to attend to the pervasive problem of inadequate [PCR] orders." 644 S.E.2d at 771 (citing to prior decisions in which the state supreme court remanded to the PCR court for further findings, despite a petitioner's non-compliance with Rule 59(e)), *rev'd*, 653 S.E.2d 266. It also discussed a single case in which the court was unwilling to overlook a petitioner's failure to comply with Rule 59(e), but stated that "it is not clear whether" the court would begin to consistently apply the rule in light of PCR-court errors that "continue to permeate [South Carolina's] judicial system."[4] *Id.* at 772.

---

[3]Citation to unpublished decisions is "disfavored" in our circuit. Loc. R. 32.1. We acknowledge *Pearson* not as support for a legal proposition, but rather to emphasize that this Court has previously taken judicial notice of the facts underlying Bostick's claim.

[4]Counsel for the warden conceded at oral argument that the intermediate court's overview of the law as it stood at the time was correct — that there were some cases in which the state supreme court clearly applied Rule 59(e) and there were other cases in which it did not.

The South Carolina Supreme Court then reversed the court of appeals' decision. *Marlar*, 653 S.E.2d at 266. In doing so, it stated that "the general rule" is that where a party fails to file a Rule 59(e) motion, the argument is forfeited. *Id.* at 267. The state supreme court acknowledged, however, that it had previously excused failures to file Rule 59 motions in order to force PCR courts to make specific findings.[5] *Id.* Even in overruling the intermediate court and insisting that it would consistently apply Rule 59(e) from that day forward, the state supreme court acknowledged that the lower court's view of the law as it existed at the time was essentially correct.

The state court of appeals issued its decision in *Marlar* in March 2007; two months *after* the state supreme court denied Bostick's petition for certiorari and two-and-a-half years after the PCR court dismissed his appeal. The state supreme court did not reverse that decision until November 2007. South Carolina, therefore, cannot be said to have "regularly" or "consistently" applied the law if both of its appellate courts acknowledged that they did not strictly enforce Rule 59(e) even months after Bostick's final appeal was denied. *See Brown*, 319 F.3d at 169. We decline to hold Bostick responsible for failing to comply with a rule when, at the time his case was decided, the state courts did not distinguish, in any principled way, those cases in which it would apply the rule from those in which it would not.[6] The district court's award of

---

[5]This statement undercuts any attempt by the warden to argue that Rule 59(e) was consistently applied insofar as it was applied to bar claims of parties similarly situated to Bostick. Failure to apply the rule stemmed not from anything about a particular case, but rather from the state supreme court's broader goal of forcing lower courts to comply with the law.

[6]We also note that the state courts' inconsistent application of Rule 59(e) here is clearly distinguishable from the Supreme Court's recent decision in *Beard v. Kindler*, No. 08-992, 2009 U.S. LEXIS 8944 (Dec. 8, 2009). In *Kindler*, the Court held only that facially discretionary state rules can be adequate to preclude federal habeas review. *Id.* at *13. We do not read *Kindler* to apply to facially mandatory rules that state courts nonetheless apply arbitrarily. Indeed, the Court in *Kindler* explicitly declined to address a broader challenge to the adequate-state-ground doctrine. *Id.* at *17.

summary judgment to the warden on the grounds that Bostick's federal habeas claim was procedurally defaulted is therefore reversed.

### B.

Having established that Bostick's ineffective assistance of counsel claim is not procedurally defaulted, we now address that claim's merits. The warden does not contest Bostick's assertion that this Court may decide whether Bostick's trial counsel was ineffective without remanding to the district court to address the issue in the first instance. Though it is generally preferable for a district court to consider the matter first, we see no need for remand in this case because no fact-finding is required, the issue has been fully briefed by each side, and the result is obvious. *Ohio Bureau of Employment Servs. v. Hodory*, 431 U.S. 471, 482 (1977); *see Forsyth County, GA v. Nationalist Movement*, 505 U.S. 123, 135 n.12 (1992); *Bigelow v. Virginia*, 421 U.S. 809, 826-27 (1975) (declining to remand where "the outcome is readily apparent").

Both sides' briefs addressed whether Bostick's counsel was ineffective, and the undisputed facts[7] that they set forth and upon which we rely, are as follows: Bostick told his daughter in open-court that he would "get a appeal." He nonetheless did not directly ask his attorney to file one. Despite Bostick's in-court statement, counsel never discussed filing an appeal with him after he was convicted. This was ostensibly because Bostick previously told counsel that he would accept the

---

[7]The only disputed factual issue is whether trial counsel told Bostick's then-wife that Bostick could not appeal because he had a jury trial or whether he simply told her that there were no grounds for appeal. But, as we discuss below, what counsel told Bostick's wife is legally irrelevant in light of the warden's concession that counsel never consulted with *Bostick* after he unambiguously indicated that he would "get a appeal," and because even if counsel had told Bostick what he told his wife, it still would not have been "consultation" in the legal sense.

jury's verdict and counsel shared this sentiment. Finally, despite counsel's failure to consult with him about an appeal or aid him in filing one, Bostick has consistently sought relief through all available channels since his conviction. In light of such an unambiguous factual record, we are confident in our ability to thoroughly analyze Bostick's claim.

To prove that an attorney's performance was so deficient that it implicated the Sixth Amendment's right to counsel, petitioner must show that counsel's performance was (1) objectively unreasonable under prevailing professional norms and (2) that petitioner was prejudiced by that deficient performance. *Strickland v. Washington*, 466 U.S. 668, 688-90, 694 (1984). Trial counsel's performance here satisfies both prongs.

1.

To establish that he is entitled to habeas relief, Bostick must first show that his attorney's performance was objectively unreasonable. *Id.* at 688-90. In the appellate context, a petitioner may demonstrate both deficient performance and prejudice by showing that counsel failed to file an appeal after the petitioner explicitly requested that counsel do so. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). Where a petitioner never explicitly requests an appeal, that petitioner can still establish deficient performance by showing that counsel failed to consult with petitioner, and that a reasonable attorney would have done so under the circumstances. *Id.* at 480. For an attorney to "consult," that attorney must advise the client about the advantages and disadvantages of an appeal and make reasonable efforts to ascertain the client's wishes. *Id.* at 478; *United States v. Witherspoon*, 231 F.3d 923, 926 (4th Cir. 2000).

Trial counsel indisputably failed to consult with Bostick about filing an appeal. After hearing Bostick tell his daughter that he would appeal, counsel admits that he never talked to

Bostick about it and instead merely told Bostick's then-wife that "[t]he jury has spoken. What possible grounds are there for an appeal?" Even assuming, without deciding, that counsel can fulfill the duty to consult before the verdict, it is likewise clear that any conversation between Bostick and his attorney before the verdict did not constitute consultation. After Bostick stated that he would be satisfied with the jury's decision, counsel testified at the PCR hearing that he agreed with Bostick's assessment. But, as a legal matter, an attorney's agreeing with the client's assertion that the client will be satisfied with the jury's verdict does not satisfy the duty to consult. *See Flores-Ortega*, 528 U.S. at 478; *Thompson v. United States*, 504 F.3d 1203, 1207 (11th Cir. 2007) ("Simply asserting the view that an appeal would not be successful does not constitute 'consultation' in any meaningful sense").

Likewise, it is clear that counsel's failure to consult flew in the face of a duty to do so. An attorney must consult with a client about filing an appeal either where a reasonable defendant would have wanted to appeal, typically because there were non-frivolous grounds to pursue, or because the particular defendant adequately demonstrated to counsel an interest in appealing. *Flores-Ortega*, 528 U.S. at 480; *Frazer v. South Carolina*, 430 F.3d 696, 707-08 (4th Cir. 2005). Though there is no per-se rule, a lawyer who fails to consult with a defendant about an appeal following a jury trial almost always[8] acts unreasonably. *Flores-Ortega*, 528 U.S. at 481 (noting that "in the vast majority of cases," counsel has a duty to consult with her client about an appeal), 488 (Breyer, J., concurring) (not-

---

[8]The Supreme Court provides two examples of when consultation would not be constitutionally necessary, both of which are inapplicable: First, where defense counsel advises a defendant to plead guilty, advises him of what sentence to expect, the defendant receives the expected sentence, the sentencing court advises the defendant of his right to appeal, and defense counsel sees no, non-frivolous grounds to pursue. *Flores-Ortega*, 528 U.S. at 479. Second, where the sentencing court so clearly advises that defendant of his right to appeal that any consultation by counsel would be unnecessary. *Id.* at 479-80.

ing that Court's opinion "makes clear that counsel does 'almost always' have a constitutional duty to consult with a defendant about an appeal after a trial"). Here, trial counsel had a duty to consult with Bostick because he went to trial, there were non-frivolous grounds to pursue, and, most importantly, Bostick unequivocally demonstrated his interest in an appeal post-verdict. *See id.* at 480.

Our review of the record reveals at least three non-frivolous grounds for appeal.[9] First, Bostick could have challenged the sufficiency of the evidence, given that he went to trial and actively contested his guilt. Next, he could have alleged that his indictment was deficient because it stated that the victim was killed by blunt-force trauma, while the proof at trial showed that she was killed by carbon-monoxide poisoning. Further, Bostick could have alleged ineffective assistance of counsel due to counsel's opening the door to evidence of Bostick's prior bad acts when counsel asked witnesses to comment on Bostick's character.[10]

Bostick also clearly demonstrated his interest in filing an appeal in open court, which was sufficient, in and of itself, to implicate his attorney's duty to consult. Bostick explicitly told his daughter, in counsel's presence, that he would appeal. Though Bostick concedes that before the verdict he told counsel that he would be satisfied with the jury's decision, this does not negate his post-conviction assertion that he was going to appeal. *See Witherspoon*, 231 F.3d at 927 (noting that where counsel failed to consult with defendant after

---

[9]Of course, we do not decide whether any of these grounds would ultimately be successful on appeal. We note only that these issues do not clearly " 'lack[ ] an arguable basis either in law or in fact.' " *McLean v. United States*, 566 F.3d 391, 399 (4th Cir. 2009) (quoting *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)).

[10]At the PCR hearing, counsel admitted that he knew character evidence would be damaging in the circumstantial case against Bostick and, in fact, designed his trial strategy so as to prevent the jury from hearing that evidence.

defendant expressed interest in appeal, "counsel's performance clearly was constitutionally deficient"). This is especially so in light of counsel's duty to consult with clients about an appeal "in the vast majority of cases," following a jury verdict. *Flores-Ortega*, 528 U.S. at 481. Counsel's failure to consult with Bostick about an appeal was therefore objectively unreasonable and constitutionally deficient.

2.

To show prejudice from counsel's failure to consult regarding an appeal, Bostick must show that but for the failure, he would have timely appealed. *Id.* at 484. This analysis overlaps with the deficient performance analysis to the extent that petitioner may satisfy the prejudice prong by showing that there were non-frivolous grounds for appeal or by showing that petitioner was so determined to appeal that consultation would not have dissuaded that petitioner from doing so. *Id.* at 485-86; *Frazer*, 430 F.3d at 708. A petitioner's "unwavering and ongoing" interest in and pursuit of an appeal demonstrates the intent to pursue that appeal regardless of an attorney's advice. *See Frazer*, 430 F.3d at 712.

As discussed above, Bostick had non-frivolous grounds to appeal his conviction. Even if he did not, he was still prejudiced by counsel's failure to consult given that he wanted to appeal and would have done so notwithstanding counsel's advice. Bostick's is hardly a case in which a petitioner initially decides to forego an appeal and decides only after years in prison to challenge a conviction; indeed, at the time of sentencing, Bostick stated in open court that he would "get a appeal." Bostick's "tenacity in pursuing habeas relief only bolsters th[e] conclusion" that he would have appealed. *Id.* Bostick has therefore satisfied the prejudice prong of his ineffective assistance of counsel claim. We are convinced that but for trial counsel's failure to consult, Bostick would have timely appealed his conviction.

## IV.

For the foregoing reasons, we reverse the district court's grant of summary judgment to the warden. We remand this case to the district court with instructions that it issue the writ of habeas corpus and that it order Bostick released from prison unless the state grants him a direct appeal within a reasonable time.

*REVERSED AND REMANDED*