UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 08-8572

ANTHONY L. MARLAR,

Petitioner - Appellant,

v.

WARDEN, TYGER RIVER CORRECTIONAL INSTITUTION,

Respondent - Appellee.

Appeal from the United States District Court for the District of South Carolina, at Charleston.   R. Bryan Harwell, District Judge.  (2:08-cv-01874-RBH)

Argued:  March 23, 2011                    Decided:  May 25, 2011

Before GREGORY, AGEE, and KEENAN, Circuit Judges.

Affirmed by unpublished opinion.   Judge Keenan wrote the opinion, in which Judge Gregory and Judge Agee joined.

**ARGUED:** Thomas Edward Vanderbloemen, GALLIVAN, WHITE & BOYD, PA, Greenville, South Carolina, for Appellant.   Samuel Creighton Waters, OFFICE OF THE ATTORNEY GENERAL OF SOUTH CAROLINA, Columbia, South Carolina, for Appellee.   **ON BRIEF:** Henry D. McMaster, Attorney General, John W. McIntosh, Chief Deputy Attorney General, Donald J. Zelenka, Assistant Deputy Attorney General, OFFICE OF THE ATTORNEY GENERAL OF SOUTH CAROLINA, Columbia, South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

KEENAN, Circuit Judge:

Anthony L. Marlar appeals from the district court's award of summary judgment in favor of the Warden of the Tyger River Correctional Institution (the State) on Marlar's petition for a writ of habeas corpus (the petition). The district court did not reach the merits of the petition, in which Marlar alleged that his trial counsel provided ineffective assistance. Instead, the district court concluded that Marlar's claim was not reviewable in a federal habeas corpus petition, because the South Carolina Supreme Court had held that Marlar failed to preserve this argument for appellate review. See Marlar v. Warden, Tyger River Correctional Inst., No. 2:08-cv-1874, 2008 WL 5111878, at *2 (D.S.C. Dec. 4, 2008) (citing Marlar v. South Carolina, 653 S.E.2d 266, 267 (S.C. 2007)). We issued a certificate of appealability to address Marlar's claim of ineffective assistance of counsel.

Based on our holding in Bostick v. Stevenson, 589 F.3d 160 (4th Cir. 2009), issued after the district court dismissed Marlar's petition, we hold that Marlar's petition alleging ineffective assistance of counsel is not procedurally barred, and we therefore consider the merits of Marlar's petition. We affirm the district court's award of summary judgment in favor of the State on a different ground than cited by the district

2

court, namely, that Marlar did not suffer prejudice as a result of his trial counsel's allegedly deficient performance.

I.

In 1997, Marlar was convicted by a jury in Anderson County, South Carolina, of criminal sexual conduct in the first degree and burglary in the first degree, based on a burglary and a rape that occurred in 1993. Marlar received consecutive sentences of 12 and 30 years, respectively, for those convictions.

The evidence at Marlar's trial established that in February 1993, two male individuals (the assailants) entered the victim's residence around 3:30 a.m. Both the assailants wore stockings over their heads, and the victim was not able to observe the faces of either of the two men during the events that followed.

After the assailants entered the victim's residence, they encountered the victim, who was in her bedroom along with one of her two young children. The victim testified that the shorter assailant stated to his taller companion, "Tony, get her out of here," in reference to the victim's daughter. The taller assailant then exclaimed, "Oh, shit," apparently upon realizing that his first name was spoken by his accomplice.

Once the child was removed from the bedroom, the two men took turns sexually assaulting the victim, with each individual engaging in nonconsensual sexual intercourse with the victim

3

while holding a large knife against her throat. After the assailants ceased having intercourse with the victim, the taller assailant retrieved a rag from the victim's bathroom, wet the rag, and then "stuck his hand up inside of [the victim's vagina] wiping [her] out and wiping the bed."

At some point during the course of these events, the assailants disconnected the telephone that was located in the victim's kitchen. The assailants did not attempt to disconnect the only other telephone in the residence, which was located in the victim's bedroom but was inoperable for the purpose of placing outgoing calls. Upon leaving the residence, the shorter assailant told the victim that they would kill her children if she informed anyone about the attack.

After a police investigation, a grand jury in Anderson County indicted Marlar and Jerry Fields for their participation in the crimes. Both Marlar and Fields initially denied committing the crimes, and each stated that the two were together in the early morning hours of the events at issue. However, after DNA evidence collected from the victim's person "matched" a sample of Fields' DNA, Fields confessed to his participation in the crimes and entered a plea of guilty to the charges. Fields implicated Marlar as his accomplice, and testified against Marlar at his trial.

4

The victim provided testimony at Marlar's trial, in which she stated that she was "a hundred percent sure" that Marlar was one of her assailants.  The victim stated that she knew Marlar before her attack, and had seen him on several previous occasions because her roommate's boyfriend was Marlar's brother.  The victim testified that Marlar knew from his visits to the residence that the telephone in the victim's bedroom could not be used to place outgoing telephone calls.

The victim also testified that one of her assailants wore a baseball jacket with red sleeves, which looked like a jacket that she had seen Marlar wearing on a previous occasion.  According to the victim, the assailant wearing the baseball jacket had a tall and slim "build," which the victim stated also was a characteristic of Marlar's "build."  These attributes, in addition to the taller assailant being referred to as "Tony" by his accomplice, led the victim to identify Marlar as one of the assailants when she reported the crime to the police.

Additionally, Fields testified that he and Marlar were the victim's assailants, stating that they had planned the attack on the same night that the crimes occurred.  Fields further testified that he and Marlar each raped the victim two times, after which Marlar used a washcloth to "clean" the victim after the sexual assault.  Fields also corroborated the victim's

statement that Fields referred to Marlar as "Tony" in front of the victim, and that Marlar responded, "Oh, shit."

The prosecution's evidence did not include DNA evidence, such as evidence derived from blood, semen, or hair, linking Marlar to the crime. And, as noted above, because the assailants wore stockings over their heads, the victim did not see the face of either of her assailants. She also was unable to identify either of them by their voices on the night of the attack.

As provided by South Carolina law, Marlar's counsel received the benefit of making the final closing argument to the jury, because he did not present any witnesses or introduce any evidence during the trial.[1] Accordingly, Marlar's counsel did not introduce into evidence a report prepared by Agent John Barron of the South Carolina State Law Enforcement Division Forensic Sciences Laboratory (SLED). This report (the Barron Report) analyzed two pubic hairs found in a box of evidence collected from the crime scene. The box of evidence also contained a bedsheet, pillowcases, a bedspread and pillow sham, a pair of pants, a black cap, and paper towels.

---

[1] Under South Carolina law, "[i]n a criminal prosecution, where a defendant introduces no testimony, he is entitled to the final closing argument to the jury." South Carolina v. Mouzon, 485 S.E.2d 918, 921 (S.C. 1997).

6

Agent Barron concluded in the Barron Report that the pubic hairs originated from an unknown person, and were "microscopically inconsistent" with those of Marlar, Fields, the victim, or the victim's boyfriend. Additionally, Agent Barron's report did not state whether those pubic hairs originated from a male or a female.

The jury convicted Marlar of burglary and criminal sexual conduct. Following his sentencing, Marlar sought relief from his convictions in the appellate courts of South Carolina.

The South Carolina Court of Appeals (Court of Appeals) initially affirmed Marlar's conviction on direct appeal. Following this decision, Marlar submitted a pro se petition for rehearing, citing a statement in the Barron Report that there were pubic hairs of unknown origin found in the box of evidence collected by investigators at the crime scene. The Court of Appeals granted Marlar's petition for rehearing and recalled its prior opinion, but ultimately affirmed the convictions. The court held that Marlar had not preserved for direct appeal any issues concerning the conclusions in the Barron Report, because "no argument relating to hair analysis was presented to the [trial] court."

Marlar thereafter applied for Post-Conviction Relief (PCR) in the trial court (the PCR court). Marlar raised several issues in his application, including his contention that he was

denied effective assistance of trial counsel because of his counsel's failure to present the hair evidence discussed in the Barron Report. The PCR court held a hearing during which the court heard testimony from Agent Barron, Marlar, and Marlar's trial counsel.

After the hearing, the PCR court issued an order on October 1, 2003, in which the court denied Marlar's application. In its order, the PCR court summarily concluded that Marlar's counsel did not render ineffective assistance and, in the alternative, that Marlar did not demonstrate any prejudice from his counsel's allegedly deficient performance. The PCR court failed to state specific findings of fact or express conclusions of law relating to each issue presented, as required by S.C. Code § 17-27-80.[2] Marlar did not ask the PCR court afterwards to make such findings and conclusions, although he was permitted to do so under Rule 59(e) of the South Carolina Rules of Civil Procedure.

A PCR court's failure to make specific findings of fact and conclusions of law, if not raised by a petitioner in that court, ordinarily precludes appellate review of a PCR proceeding by the state courts of South Carolina. See Pruitt v. South Carolina,

---

[2] This provision of the South Carolina Code states, in relevant part, that a court adjudicating an application for post-conviction relief "shall make specific findings of fact, and state expressly its conclusions of law, relating to each issue presented." S.C. Code § 17-27-80.

8

423 S.E.2d 127, 128 (S.C. 1992) (per curiam).[3]  Nevertheless, Marlar appealed the denial of his application for PCR relief to the Court of Appeals, which vacated the denial of Marlar's application.  The Court of Appeals held that the PCR court's order was inadequate because it did not include specific findings of fact and conclusions of law.  See Marlar v. South Carolina, 644 S.E.2d 769, 771 (S.C. Ct. App.), rev'd 653 S.E.2d 266 (S.C. 2007).  The Court of Appeals declined to hold that Marlar's appeal was foreclosed by his failure to file a motion pursuant to Rule 59(e), and concluded that Marlar's case should be remanded to the PCR court.  Id. at 771-72.

The South Carolina Supreme Court (the Court) granted a petition for writ of certiorari to review the judgment of the Court of Appeals.  The Court reversed the Court of Appeals' judgment, thereby reinstating the PCR court's denial of Marlar's application for post-conviction relief.  653 S.E.2d 266 (S.C. 2007.)  The Court held that any issues concerning the Barron Report were not preserved for appeal based on Marlar's failure to file a Rule 59(e) motion.  Id. at 267.  The Court stated that although it had remanded post-conviction applications in certain

---

[3] The Court's opinion in Pruitt explained that "[e]ven after an order [denying post-conviction relief] is filed, counsel has an obligation to review the order and file a Rule 59(e) [] motion to alter or amend if the order fails to set forth the findings and the reasons for those findings as required by [S.C. Code] § 17-27-80."  423 S.E.2d at 128.

9

cases to a PCR court to make specific findings of fact and conclusions of law in the absence of a Rule 59(e) motion, those cases presented "unique" circumstances that were not present in Marlar's case.  Id.

After his unsuccessful attempts in the South Carolina state courts to vacate his convictions, Marlar filed a habeas corpus petition in the district court under 28 U.S.C. § 2254.  In his petition, Marlar alleged that his trial counsel's failure to introduce the Barron Report into evidence constituted ineffective assistance of counsel.[4]

Upon consideration of the State's motion for summary judgment, a magistrate judge issued a report recommending that the district court grant the motion.  The district court adopted the magistrate judge's report and recommendation, and awarded judgment in favor of the State, holding that Marlar's claims of ineffective assistance of counsel were procedurally barred due to his failure to file a Rule 59(e) motion asking the PCR court to make specific findings of fact and conclusions of law.  2008 WL 5111878, at *2.  The district court explained that because Marlar had not preserved this issue for appellate review in the state courts of South Carolina, the claim was not cognizable in

---

[4] Marlar raised several other issues in his petition for habeas corpus, none of which is at issue in this appeal.

10

a petition for habeas corpus filed in federal court.[5] Id. at *1 (citing Fisher v. Angelone, 163 F.3d 835, 844 (4th Cir. 1998)). Accordingly, the district court did not reach the merits of Marlar's petition.

The district court issued its order dismissing Marlar's petition before we issued our opinion in Bostick v. Stevenson, 589 F.3d 160 (4th Cir. 2009). In Bostick, we addressed the identical procedural issue presented here, namely, whether the failure to file a Rule 59(e) motion in a South Carolina PCR proceeding precludes any consideration of habeas corpus relief in a federal court.

We answered this question in the negative in Bostick, holding that the failure to file such a motion was not a procedural bar because "Rule 59(e) was not consistently applied by the South Carolina courts" at the time of Bostick's PCR proceedings in 2004. 589 F.3d at 164. Significantly, our decision in Bostick referenced the state appellate proceedings in Marlar's case as an illustration that the South Carolina

_____

[5] As stated by the district court, "[i]f a petitioner in federal court has failed to raise a claim in state court at the appropriate juncture, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in state courts and the claim will be considered procedurally defaulted. As a consequence, the petitioner will be barred from raising the issue in his federal habeas petition." 2008 WL 5111878, at *1 (citing Fisher v. Angelone, 163 F.3d 835, 844 (4th Cir. 1998)).

11

courts "did not distinguish, in any principled way, those cases in which it would apply [Rule 59(e)] from those in which it would not." Id. at 165.

Because Marlar filed his appeal from the district court's judgment while the appeal in Bostick was pending, we held Marlar's appeal in abeyance until after we decided Bostick. Following our decision in Bostick, we issued a certificate of appealability in this case under 28 U.S.C. § 2253(c) to resolve the issue "whether trial counsel was ineffective for failing to call [a] state investigator to testify about potentially exculpatory crime scene hair evidence."

II.

We review de novo a district court's award of summary judgment in a habeas corpus proceeding. Bostick, 589 F.3d at 163; Frye v. Lee, 235 F.3d 897, 902 (4th Cir. 2000). In cases in which a habeas petitioner's claim has been "adjudicated on the merits" by a state court, a federal court may not grant relief unless the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); see Bostick, 589 F.3d at 163. However, when, as in the present case, the state court did not reach the merits of the petitioner's claim and instead ruled on

12

procedural grounds, we review the petitioner's claim de novo. Bostick, 589 F.3d at 163; Hudson v. Hunt, 235 F.3d 892, 895 (4th Cir. 2000).

A.

We first address the issue whether Marlar may raise in his federal habeas petition arguments concerning his trial counsel's alleged ineffectiveness, despite Marlar's failure to file a Rule 59(e) motion in the PCR court requesting that the court make specific findings of fact and express conclusions of law. Applying our holding in Bostick, we conclude that Marlar may pursue his ineffective assistance of counsel claim in federal court, even though the South Carolina appellate courts declined to reach the merits of his claim.

As noted above, we held in Bostick that "Rule 59(e) was not consistently applied by the [South Carolina] courts" at the time of Bostick's PCR proceedings in 2004. 589 F.3d at 163-64. This holding is squarely applicable here because Marlar's PCR proceedings occurred in 2003, just a year before Bostick's PCR proceedings, and thus also took place during the time period in which South Carolina courts applied Rule 59(e) in an inconsistent manner. Therefore, under Bostick, Marlar's

13

ineffective assistance of counsel claim is not procedurally barred from appellate review in the federal courts.[6]

## B.

Addressing the merits of his appeal, Marlar argues that his trial counsel was ineffective in failing to introduce into evidence the Barron Report, or testimony referencing the Barron Report's conclusions, concerning the pubic hairs of unknown origin found in the box of evidence collected by investigators at the crime scene. According to Marlar, these pubic hairs may have come from one of the victim's "true" assailants. Marlar contends that if his trial counsel had developed this evidentiary issue, there is a reasonable probability that the jury would not have convicted him of the sexual assault and burglary charges.

In response, the State argues that Marlar's counsel provided effective representation to Marlar, and that the

---

[6] In reaching this conclusion, we also reject the State's argument that Marlar is barred from raising his claim because he did not "specifically object on the ground that the Rule 59(e) bar was not consistently applied." We again note that Bostick had not been decided at the time that Marlar could have raised this objection. We decline to hold Marlar, who was proceeding pro se at this time, responsible for failing to predict our Bostick holding years in advance. Moreover, Marlar cited Rule 59(e) in a motion objecting to the magistrate judge's report and recommendation. We construe this pleading in the light most favorable to Marlar because he was proceeding pro se, see Haines v. Kerner, 404 U.S. 519, 520 (1972), and we hold that Marlar adequately preserved this argument for our review.

14

decision not to introduce the evidence from the Barron Report was a strategic trial decision, which allowed Marlar to preserve the right to present the "last argument" during closing arguments at his trial. The State also contends that even if Marlar's counsel rendered ineffective assistance in not bringing the issue of the unidentified pubic hairs to the jury's attention, Marlar suffered no prejudice because the value of that evidence was minimal and overwhelming evidence supported the jury's verdict.

In deciding this issue, we apply well-established principles of law. A defendant's right to counsel under the Sixth Amendment includes the right to effective assistance of counsel. Yarborough v. Gentry, 540 U.S. 1, 5 (2003); Roe v. Flores-Ortega, 528 U.S. 470, 476-77 (2000); Strickland v. Washington, 466 U.S. 668, 685-86 (1984); Rubin v. Gee, 292 F.3d 396, 401 (4th Cir. 2002). Under this guarantee, a defendant is entitled to counsel who is reasonably competent and who gives advice that is within the range of competence required of attorneys in criminal cases. Wiggins v. Smith, 539 U.S. 510, 521-23, (2003); Kimmelman v. Morrison, 477 U.S. 365, 384, (1986); Strickland, 466 U.S. at 687; Bell v. Evatt, 72 F.3d 421, 427 (4th Cir. 1995).

To prevail on a claim of ineffective assistance of counsel, a petitioner must ordinarily satisfy both parts of the two-part

15

test set forth in Strickland. Wiggins, 539 U.S. at 521; Williams v. Taylor, 529 U.S. 362, 390 (2000); Strickland, 466 U.S. at 687; Bell, 72 F.3d at 427. The petitioner first must show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687-88; accord Wiggins, 539 U.S. at 521; Williams, 529 U.S. at 390-91; Bell, 72 F.3d at 427. In making this determination, the court considering the habeas corpus petition "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689; accord Kimmelman, 477 U.S. at 381; Darden v. Wainwright, 477 U.S. 168, 185-86 (1986); Bell, 72 F.3d at 427.

If counsel's performance is found to have been deficient under the first part of the Strickland test, to obtain relief the petitioner must also show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694; accord Wiggins, 539 U.S. at 534; Williams, 529 U.S. at 390-91; Gray v. Branker, 529 F.3d 220, 234 (4th Cir. 2008).

A reviewing court, however, is not required to determine whether "counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the

16

alleged deficiencies." Strickland, 466 U.S. at 697. Therefore, the Supreme Court's decision in Strickland instructs that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id.; see also Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007) (following Supreme Court's instruction in Strickland to proceed directly to "prejudice" prong if petitioner cannot demonstrate reasonable probability that outcome of trial would be different but for counsel's performance); Buckner v. Polk, 453 F.3d 195, 202 (4th Cir. 2006) (same).

In addressing Marlar's claim, as recommended by the Supreme Court in Strickland, we move directly to consider the "prejudice" prong of the Strickland test. Under this prong, we examine the issue whether there is a "reasonable probability" that trial counsel's decision not to place the Barron Report in evidence, or otherwise address the conclusions drawn in the Barron Report during the trial, "undermine[s] confidence in the outcome" of the jury's verdict of guilty. Strickland, 466 U.S. at 694. As directed by the Supreme Court, we make this determination by considering the totality of the evidence before the trier of fact. See Strickland, 466 U.S. at 695; see also Kimmelman, 477 U.S. at 381.

17

After reviewing the evidence presented at trial, and the evidence concerning the Barron Report offered by Marlar in the PCR court and in the proceedings that followed, we conclude that Marlar has failed to demonstrate that his defense was prejudiced by trial counsel's failure to present evidence concerning the pubic hairs noted in the Barron Report. We reach this conclusion because there was extensive evidence at trial supporting the jury's verdict, and the probative value of the Barron Report's conclusions regarding the hair evidence is limited.

First, there was very strong evidence of Marlar's guilt presented at his trial. As described above, the victim testified that she was "a hundred percent sure" that Marlar was one of her assailants, even though her assailants used stockings to mask their faces. On several occasions prior to the attack, the victim had met Marlar, becoming familiar with Marlar's tall and slim "build," which the victim testified resembled the "build" of the assailant who was called "Tony" by his accomplice. In addition to confirming Fields' testimony that he referred to his accomplice as "Tony," the victim testified that "Tony" responded, "Oh, shit," upon hearing his name uttered out loud by the other assailant. Further, the victim testified that she was familiar with a baseball jacket with red sleeves that

18

she previously had observed Marlar wearing, which she identified as being similar to the jacket worn by "Tony" during the attack.

The manner in which the assailants carried out their attack also provided corroborative evidence of Marlar's guilt. Marlar had been at the victim's residence prior to the attack and, as stated by the victim in her testimony, was aware that the telephone in the victim's bedroom could not be used to place outgoing calls. It is thus significant that the assailants disconnected the telephone in the kitchen, but did not attempt to disconnect the telephone in the victim's bedroom where the rape took place.

We also observe that Fields admitted his role in the crimes, identified Marlar as his accomplice, and testified that he and Marlar agreed to use each other to provide an alibi regarding their whereabouts on the morning in question. Fields also acknowledged that he inadvertently called Marlar by his first name, "Tony," in front of the victim during the attack.

Additionally, we observe that Detective Jean Sutton of the Anderson County Sheriff's Office, who interviewed Marlar in connection with the investigation, testified that Marlar told her that he and Fields were together during the time period in which the sexual assault took place. This testimony had the dual impact of supplying Marlar's admission that he was with Fields during the time period that the crimes occurred, and of

19

corroborating Fields' testimony that he and Marlar had agreed to use each other to provide an alibi.

In contrast to this very strong evidence of Marlar's guilt, the probative value of the evidence concerning the pubic hairs was limited. As stated above, the pubic hairs at issue were found in a box that also contained pillowcases, a bedspread and pillow sham, a bed sheet, a pair of pants, a cap, and paper towels. Although the Barron Report excluded Marlar, as well as Fields, the victim, and the victim's boyfriend, as the source of the pubic hairs, the Barron Report did not offer any other conclusions regarding the identity of the person or persons who deposited the pubic hairs. Notably, the Barron Report was not probative of the issue whether the hairs originated from a male or a female.

There also was no evidence indicating where or when the pubic hairs at issue were deposited on any item or items that ultimately were placed in the crime scene evidence box. Significantly, those hairs could have been deposited on any of the items found in the evidence box. Further, there was no evidence concerning who may have owned or worn some of the items found in the evidence box, such as the pants and black cap. In short, there is no evidence in the record supporting a physical or temporal connection between the sexual assault on the victim and the pubic hair evidence noted in the Barron Report.

20

Our conclusion is not altered by Marlar's additional argument that the prosecutor misleadingly informed the jury during closing arguments that "[t]he defense has been provided obviously with everything. You saw this. Every report, every SLED report has been provided and obviously you saw it. Every report, every SLED report, everything." Marlar has not contended in his federal habeas proceedings that his counsel's failure to object to these comments constituted ineffective assistance of counsel. Moreover, the prosecutor's misleading remarks do not change the fact that the record fails to connect the hair evidence at issue to a male, to any particular item collected at the crime scene, or to the time period in which the sexual assault occurred.

For these reasons, we conclude that the record does not demonstrate that, but for trial counsel's alleged failures, there is a reasonable probability that the result of Marlar's trial would have been different. In sum, the record before us does not undermine confidence in the outcome of the proceedings. See Strickland, 466 U.S. at 694. Because we reach this conclusion, we need not address whether the performance of Marlar's trial counsel was deficient. See id. at 697. Accordingly, we affirm the district court's judgment dismissing Marlar's petition for a writ of habeas corpus.

AFFIRMED

21